**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

HEATHER PAINTER,

    Plaintiff(s),

v.

AARON ATWOOD, D.D.S., et al.,

    Defendant(s).

2:12-CV-1215 JCM (RJJ)

**ORDER**

Presently before the court is defendants' motion to dismiss (doc. # 5). Plaintiff filed a response in opposition (doc. # 10), and defendants filed a reply (doc. # 11).

**I.    Background**

Plaintiff began working at defendant Atwood Urgent Dental Care, PLLC ("Atwood Urgent") in or around July 2010. (Doc. # 1, Compl. at ¶ 8). Atwood Urgent is a "24/7" dental practice that served patients after business hours. (*See id.* at ¶ 9). Plaintiff's duties included assisting defendant Dr. Aaron Atwood with dental procedures in addition to office and clerical work. (*Id.* at ¶ 8). Plaintiff would occasionally perform these duties in the evenings. (*Id.* at 9).

Plaintiff alleges that after a few months of employment Dr. Atwood began to initiate conversations focusing on her dating life. (*Id.* at 11). According to plaintiff, Dr. Atwood's actions and comments became increasingly more sexual and aggressive. (*See id.* at ¶¶ 11-15).

Plaintiff alleges that in August 2011, Dr. Atwood requested that she accompany him to the office to work on a patient. (*Id.* at ¶ 16). The patient did not show. (Id. at 17). Plaintiff alleges that

**James C. Mahan**
**U.S. District Judge**

1   Dr. Atwood, with no one else in the building, attempted to either rape or sexually assault her. (*Id.*
2   at 17). Plaintiff eventually stopped working at Atwood Urgent.

3   These facts led to plaintiff filing the instant action. Plaintiff alleges the following four cases
4   of action: (1) intentional infliction of emotional distress ("IIED"); (2) battery; (3) false
5   imprisonment; and (4) constructive discharge. (*See id.*).

## II.   Legal Standard

7   A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can
8   be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain
9   statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell*
10  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual
11  allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements
12  of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted). "Factual
13  allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus,
14  to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim
15  to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

16  In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when
17  considering motions to dismiss. First, the court must accept as true all well-pled factual allegations
18  in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 1950.
19  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not
20  suffice. *Id*. at 1949. Second, the court must consider whether the factual allegations in the complaint
21  allege a plausible claim for relief. *Id*. at 1950. A claim is facially plausible when the plaintiff's
22  complaint alleges facts that allows the court to draw a reasonable inference that the defendant is
23  liable for the alleged misconduct. *Id*. at 1949.

24  Where the complaint does not permit the court to infer more than the mere possibility of
25  misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id*.
26  (internal quotations omitted). When the allegations in a complaint have not crossed the line from
27  conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

28

**James C. Mahan**
**U.S. District Judge**

- 2 -

**III.   Discussion**

Defendants' motion addresses the causes of action for battery, IIED, and false imprisonment together. Their arguments to dismiss apply the same reasoning to these causes of action. The court will address each of these claims together.

Defendants base their motion to dismiss the constructive termination cause of action on separate reasoning. The court will address this cause of action independently of the other three.

*A.   Battery, False Imprisonment, and IIED*

Defendants argue that the tort claims battery, false imprisonment and IIED are preempted by NRS 613.330. According to defendants, alleged discrimination and harassment, masked as common law intentional torts, that stem from employment practices at the work place are preempted by the statutory framework provided in NRS 613.330. Defendants further argue that plaintiff should not be able to amend her complaint because Atwood Urgent has fewer than fifteen employees and NRS chapter 613 applies only to employers with fifteen or more employees. Finally, for the first time in their reply brief, defendants argue that NRS 616A.020(1) preempts plaintiff's tort claims. Defendants never argue that plaintiff has failed to establish any of the elements of the state law tort claims.

Plaintiff counters by relying on a single Nevada federal case applying NRS 613.330 directly on point. Plaintiff then argues that the administrative remedies required by the NRS chapter 613 framework do not apply since plaintiff's causes of action are for intentional torts.

Under NRS 613.330, "it is unlawful employment practice to discriminate against any person because of his or her race or color." *Fox v. Sysco Corp.*, no. 2:11-cv-00424, 2011 WL 5838179, at *4 (D. Nev. Nov. 21, 2011). "Although the language of the federal and state statutes refers to discrimination in hiring, termination, and classification of employees, courts have read into the laws a prohibition on sexual harassment." *Burns v. Mayer*, 175 F.Supp.2d 1259, 1265 (D. Nev. 2001).

Defendants' arguments and supporting cases are easily distinguishable. Defendant relies on *Brinkman v. Harrah's Operating Casino Co.*, Inc., no. 2:08-cv-00817 (D. Nev. Oct. 16, 2008), for the proposition that "tort claims premised on discrimination in employment are remedied under the

**James C. Mahan
U.S. District Judge**

- 3 -

1  statute." However, in *Brinkman*, the tort claims were based on age discrimination, a subject clearly
2  intended to be remedied by the statutory framework.

3        In this case the tort claims, while based on conduct occurring at work, are based on an alleged
4  sexual *assault* or rape.  To the extent that the argument is the claims are really based on sexual
5  harassment, this court has already held that tort claims based on sexual harassment are not preempted
6  by NRS chapter 613.  *Burns v. Mayer*, 175 F.Supp.2d 1259, 1267 (D. Nev. 2001) ("Most courts,
7  including those of Nevada's sister states of California and Arizona, permit both a sexual harassment
8  claim under state anti-discrimination laws and an emotional distress claim under common law.")
9  (internal citations omitted).  Further this court clearly stated that it believed "that, if presented with
10 the issue, the Nevada Supreme Court would side with the California and Arizona high courts and
11 find that Nevada's anti-discrimination law also does not preempt common law tort claims." *Id.* at
12 1267-68.  Plaintiff's claims are not preempted.

13       Defendants also argue that the NRS chapter 613 framework cannot apply to them because
14 § 613.310(2) covers only "employer[s]" with "15 or more employees for each working day in each
15 of 20 or more calendar weeks in the current or proceeding calendar year."  Defendants argument is
16 essentially that all plaintiff's claims must be preempted by NRS chapter 613.  Defendants then argue
17 NRS chapter 613 cannot apply to defendants because defendants do not qualify as an "employer"
18 because they have fewer than 15 employees.

19       Simply, the law cannot operate this way.  Under defendants' interpretation of the statute,
20 employers with fewer than 15 employees could never be sued for sexual assault because those claims
21 must be preempted by NRS chapter 613 and NRS chapter 613 cannot apply to small employers.  It
22 is well established maxim that statutes cannot be interpreted in such a way as to produce absurd
23 results.  The interpretation proffered by defendants would be absurd and is an incorrect interpretation
24 of the statutory framework.

25     B.    NIIA

26       In the first time in the reply brief, defendants argue that the battery, false imprisonment and
27 IIED claims are preempted by Nevada Industrial Insurance Act ("NIIA"), the state's workers
28

**James C. Mahan**
**U.S. District Judge**

- 4 -

compensation law. *See* NRS 616A.005 et seq. "The exclusive remedy provision of the NIIA provides that 'the rights and remedies provided in chapters 616A to 616D, inclusive, of NRS for an employee on account of an injury by accident sustained arising out of and in the course of the employment shall be exclusive." *Conway v. Circus Circus Casinos, Inc.*, 8 P.3d 837, 839 (Nev. 2000) (quoting NRS 616A020(1)).

Defendants rely on *Wood v. Safeway, Inc.*, 121 P.3d 1026 (Nev. 2005) for the proposition that claims originating from an alleged sexual assault can be preempted by the NIIA. This can be true depending on the facts and claims, but the claims based on an alleged sexual assault in this case are not preempted by the NIIA.

In *Wood*, the Nevada Supreme Court stated "that the sexual assault of an employee falls within the NIIA if the nature of the employment contributed to or otherwise increased the risk of assault beyond that of the general public. That same assault is not within the NIIA, however, when the animosity or dispute which culminates in the assault is imported into the place of employment from the injured employee's private or domestic life, at least where the animosity is not exacerbated by the employment." *Wood*, 121 P.3d at 1034. In *Wood*, the court held that the claims stemming from an alleged sexual assault were preempted by the NIIA because:

> "It is uncontroverted that Doe's employment with Safeway brought her into contact with the assailant. While the nature of her work required her to interact with employees and the public, her specific job duties included cleaning various areas of the store and collecting shopping carts from the parking lot. Two of the sexual assault occurred while she was collecting carts from a lot that was behind or next to the store, and the other in a cleaning supply room that was presumably in an area off limits to the public. As a result, we conclude that Doe's employment contributed to and increased the risk of assault beyond that of the general public."

*Id.* at 1034. In *Wood*, the victim was specially vulnerable because of her working conditions.

More importantly, the specific claims dismissed by the *Wood* court under this reasoning were for negligent failure to train employees and maintain a safe working environment and negligent selection, appointment, training supervision, and retention. *See id.* at 1033-34. This is important because the NIIA covers "injuries" resulting from "accidents" at work, which may preempt negligence claims. *See id.* at 1033-34; *see also Young v. Zappos.com, Inc.*, no. 2:08-cv-741-JCM-

James C. Mahan
U.S. District Judge

- 5 -

1  PAL, 2010 WL 1612140, at *4 (D. Nev. April 19, 2010) ("Significantly, in *Wood* [ ], the Nevada
2  Supreme Court thoroughly analyzed the NIIA's preclusive effect on an employee's claims of
3  negligent hiring, training supervision, sexual harassment, and negligent infliction of emotions
4  distress against her employer.").

5  Here, all of plaintiffs claims are for intentional torts of the owner of a business, not
6  negligence claims based on an employee who could take advantage of a victim because of the unique
7  opportunities for predatory behavior based on the victim's and assailant's working conditions. In
8  this case there is no negligence alleged that occurred from a situational "accident." The complaint
9  states that "Dr. Atwood contacted Heather (who was staying with her parents) and requested that she
10 accompany him to the office late at night to work on a patient." (Doc. # 1, Compl., ¶ 16). Allegedly,
11 Dr. Atwood contacted plaintiff, took her to work, and then sexually assaulted her at work late in the
12 evening when no other employees were in the building and the patient did not show up. (*See id.*).

13 Finally, this court is not convinced, under the facts alleged in the compliant, that "the nature
14 of the employment contributed to or otherwise increased the risk of assault beyond that of the general
15 public" as required by *Wood*. The complaint alleges significant non-work interactions between the
16 victim and alleged assailant such that the "dispute which culminate[d] in the assault [may have been]
17 imported into the place of employment from the injured employee's private or domestic life." *See*
18 *Wood*, 121 P.3d at 1034. The court, at this stage, cannot say that the alleged incident occurred solely
19 based on a work relationship and not based on their outside of work relationship. Plaintiff babysat
20 defendant's children on multiple occasions, plaintiff's parents lived down the street from defendant
21 so they knew each other prior to her beginning her employment, and plaintiff and defendant knew
22 each other through interactions at their church.

23   C. *Constructive Discharge*

24 Defendants argue that Nevada recognizes only five non-statutory public policy exceptions
25 which permit an at-will employee to sue for wrongful termination. According to defendant, "rape
26 or sexual assault is not a recognized public policy exception," so plaintiff cannot state a cause of
27 action for constructive discharge.

28

**James C. Mahan**
**U.S. District Judge**

- 6 -

1  One of the five recognized public policy exceptions is "refusing to work under conditions unreasonably dangerous to the employee." Plaintiff counters by arguing that rape or sexual assault creates an unreasonably dangerous working condition.

"Employees in Nevada are presumed to be employed at-will unless the employee can prove facts legally sufficient to show a contrary agreement was in effect." *Dillard Dept. Stores, Inc., v. Beckworth*, 989 P.2d 882, 884-85 (Nev. 1999) (internal citations and quotations omitted). "The at-will rule gives the employer the right to discharge an employee for any reason, so long as the reason does not violate public policy." *Id.*

"A constructive discharge has been held to exist when an employer creates working conditions so intolerable and discriminatory that a reasonable person in the employee's position would feel compelled to resign." *Martin v. Sears Roebuck and Co.*, 889 P.2d 551, 553 (Nev. 1995). "A tortious constructive discharge is show to exist upon proof that:

> "(1) the employee's resignation was induced by action and conditions that are violative of public policy; (2) a reasonable person in the employee's position at the time of resignation would have also resigned because of the aggravated and intolerable employment actions and conditions; (3) the employer had actual or constructive knowledge of the intolerable actions and conditions and their impact on the employee; and (4) the situation could have been remedied."

*Beckwith*, 989 P.2d at 885. "One of the elements necessary to prove constructive tortious discharge is that the action by the employer was in violation of public policy." *Id.* at 886. The public policy exceptions in the tortious discharge or constructive discharge context "are severely limited to those rare and exceptional cases where the employer's conduct violates strong and compelling public policy." *Sands Regent v. Valgardson*, 777 P.2d 898, 900 (Nev. 1989).

Defendants argument that plaintiff cannot state a claim for constructive discharge because "rape or sexual assault is not a recognized public policy exception" is simply wrong. Just because the Nevada Supreme Court has not explicitly stated that rape or sexual assault is violates the state's public policy does not mean that rape or sexual assault cannot violate the state's public policy[1]. It

---

[1] This court, on its independent search, is aware of no case from the Nevada Supreme Court where it implied or explicitly stated sexual assault or rape is not a public policy exception. The

James C. Mahan
U.S. District Judge

- 7 -

is obvious and self-evident that rape or sexual assault would violate the public policy of the state. NRS 233.010(1) provides that "it is hereby declared to be the public policy of the State of Nevada to protect the welfare, prosperity, health and peace of all the people state, and to foster the right to all persons reasonably to seek, obtain and hold employment. . . ." To hold that rape or sexual assault does not violate public policy would utterly fail to "protect the welfare, prosperity, health, and peace of all the people of the state," and undermine "the right [of] all persons [to] reasonably [ ] seek, obtain and hold employment" to such an extent that it would not exist.

Further, rape and sexual assault are serious crimes. Nevada has statutes, like every other state in the country, prohibiting such conduct. *See e.g.*, NRS 200.366. The court disagrees with defendants' argument that rape or sexual assault cannot become an exception because it has not been "recognized." The court finds it a strong and compelling public policy to prevent rape and sexual assault from occurring anywhere, including the workplace.

IT IS HEREBY ORDERED, ADJUDGED, DECREED that defendants' motion to dismiss (doc. # 5) be, and the same hereby, is DENIED.

DATED December 12, 2012.

_____
**UNITED STATES DISTRICT JUDGE**

---

parties have not identified a case either in which the state supreme court addresses this issue.