**HOWARD & HOWARD ATTORNEYS PLLC**
Robert L. Rosenthal, Esq.
State Bar No. 6476
Jason P. Rosenthal, Esq.
State Bar No. 12127
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
Telephone: (702) 257-1483
Facsimile: (702) 567-1568
E-Mail Address: rlr@h2law.com
                jw@h2law.com
*Attorneys for Defendants, Counterclaimant*
*and Third Party Plaintiff*

**UNITED STATES DISTRICT COURT FOR**

**THE DISTRICT OF NEVADA**

| | |
|---|---|
| HEATHER PAINTER | Case No.: 2:12-cv-1215-JCM-(NJK) |
|       Plaintiff, | Dept. No: XXIX |
| vs. | |
| AARON ATWOOD, D.D.S.; and ATWOOD URGENT DENTAL CARE, PLLC | **DEFENDANTS' MOTION FOR SPOLIATION SANCTIONS FOR** |
|       Defendants. | **DESTRUCTION OF TEXT MESSAGES AND SOCIAL MEDIA POSTS** |
| AARON ATWOOD, D.D.S. | |
|       Counterclaimant, | **ORAL ARGUMENT REQUESTED** |
| vs. | |
| HEATHER PAINTER | |
|       Counter-Defendant. | |
| KELLI ATWOOD, | |
|       Third Party Plaintiff, | |
| vs. | |
| HEATHER PAINTER, | |
|       Counter-Defendant / | |
|       Third Party Defendant. | |

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
(702) 257-1483

In compliance with LR 26-7, Defendants, Atwood Urgent Dental Care, PLLC ("Urgent Dental") and Aaron Atwood, D.D.S. ("Dr. Atwood") (collectively the "Atwood Defendants"), by and through their attorneys, Howard & Howard Attorneys PLLC, hereby move this Court for an order dismissing Plaintiff Heather Painter's ("Plaintiff") Complaint for spoliation of evidence or, in the alternative, for an adverse inference instruction.

This Motion is based upon the pleadings and papers on file herein, the following Memorandum of Points and Authorities, the Declarations of Robert Rosenthal ("Rosenthal Declaration") and Kelli Atwood ("Atwood Declaration") submitted in support hereof, and any oral argument to be made by counsel at the hearing set in this matter.

DATED this 16th day of January, 2014.

HOWARD & HOWARD ATTORNEYS PLLC

By: /s/ Robert Rosenthal
    Robert Rosenthal, Esq.
    Jason P. Rosenthal, Esq.
    3800 Howard Hughes Pkwy, Ste. 1000
    Las Vegas, Nevada 89169
    *Attorneys for Defendants, Counterclaimant*
    *and Third-Party Plaintiff*

2459024

In compliance with LR 26-7, Defendants, Atwood Urgent Dental Care, PLLC ("Urgent Dental") and Aaron Atwood, D.D.S. ("Dr. Atwood") (collectively the "Atwood Defendants"), by and through their attorneys, Howard & Howard Attorneys PLLC, hereby move this Court for an order dismissing Plaintiff Heather Painter's ("Plaintiff") Complaint for spoliation of evidence or, in the alternative, for an adverse inference instruction.

This Motion is based upon the pleadings and papers on file herein, the following Memorandum of Points and Authorities, the Declarations of Jason P. Rosenthal ("Rosenthal Declaration") and Kelli Atwood ("Atwood Declaration") submitted in support hereof, and any oral argument to be made by counsel at the hearing set in this matter.

DATED this 16th day of January, 2014.

HOWARD & HOWARD ATTORNEYS PLLC

By: /s/ Robert Rosenthal
Robert Rosenthal, Esq.
Jason P. Rosenthal, Esq.
3800 Howard Hughes Pkwy, Ste. 1000
Las Vegas, Nevada 89169
*Attorneys for Defendants, Counterclaimant
and Third-Party Plaintiff*

2459024

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
(702) 257-1483

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.
## INTRODUCTION

In an effort to hinder the Atwood Defendants' defense and bolster Plaintiff's claims, Plaintiff, and her two main witnesses, Veronica Painter (Plaintiff's step-mother) ("Veronica") and Cristina Rivadeneira ("Cristina"), have intentionally destroyed text messages and Facebook posts that contradict Plaintiff's claims and deposition testimony.[1] Plaintiff, Veronica, and Cristina destroyed this crucial evidence *after* they had retained Cohen & Padda and *after* Plaintiff's counsel threatened to sue Defendants. Unfortunately, this is just the latest in a long list of discovery tactics engaged in by Plaintiff to disadvantage the Atwood.

Throughout the discovery process, Plaintiff has been anything but forthcoming in producing discoverable material, even forcing the Atwood Defendants to file a Motion to Compel before Plaintiff finally provided responses to written discovery requests. The destruction of text messages and Facebook posts greatly prejudices the Atwood Defendants and prevents them from being able to fully present their case at the time of trial. Accordingly, spoliation sanctions are warranted, and this Court should dismiss Plaintiff's Complaint for this unacceptable conduct. In the event the Court is not inclined to dismiss Plaintiff's Complaint, this Court should issue an adverse inference instruction that the destroyed evidence was detrimental to Plaintiff's claims.

/ / /

/ / /

/ / /

---

[1] Plaintiff, Veronica Painter, and Cristina Rivadeneira are all represented by the same law firm, Cohen & Padda, LLP ("Cohen & Padda").

2459024

3

## II.
## PROCEDURAL HISTORY / FACTS

The alleged incident that serves as the basis for Plaintiff's Complaint occurred on or about May 29, 2011. *Plaintiff retained attorney Ruth Cohen from the law firm of Cohen & Padda in late June or early July 2011.* (*See* Plaintiff's Deposition Transcript at 223:1-4, attached to the Rosenthal Declaration as Exhibit A.) Veronica Painter, Plaintiff's stepmother, accompanied Plaintiff on her visit to Cohen & Padda, and also retained Cohen & Padda to act her counsel. (*See* Veronica Painter's Deposition Transcript at 172:2-10 and 7:3-10, attached to the Rosenthal Declaration as Exhibit B.)

In August 2011, Plaintiff's attorney called the Atwood Defendants, stated that she represented Plaintiff, and presented a demand. The Atwood Defendants then retained Howard & Howard, and their counsel, Robert Rosenthal, proceeded to speak to Plaintiff's attorney. During the conversation, Mr. Rosenthal advised Ms. Cohen that Plaintiff was precluded from bringing employment discrimination claims under Title VII because Urgent Dental did not have fifteen or more employees. The Atwood Defendants did not hear anything further from Plaintiff or her counsel until Plaintiff filed the subject Complaint approximately eleven months later on July 10, 2012. (*See* Rosenthal Declaration.)

Plaintiff's Complaint alleges causes of action for constructive discharge, battery, false imprisonment, and intentional infliction of emotional distress. (*See* Dkt. No. 1 and attached to the Rosenthal Declaration as Exhibit C.) Specifically, Plaintiff claims that during her employment, Dr. Atwood repeatedly made sexual remarks and touched her inappropriately, which ultimately forced her to resign. (*Id.* at ¶¶ 13-14 and 29.) In addition, Plaintiff's Complaint alleges that on May 29, 2011, Dr. Atwood held her down and attempted to sexually

2459024

force himself upon her.[2]  (*Id.* at ¶ 16.)  Notably, in support of this claim, Plaintiff relies upon a text message purportedly sent by Dr. Atwood to Plaintiff, in which Dr. Atwood stated:

> I feel so bad.  I'm sorry!  You are a great employee and friend.  I'm sorry I pissed you off.  Please forgive me.

(*Id.* at ¶ 18.)

While Plaintiff was employed at Urgent Dental, she was "friends" with Dr. Atwood's wife, Kelli, on Facebook.  (*See* Atwood Declaration at ¶ 4.)  As a result of Plaintiff's and Ms. Atwood's "friend" status, Ms. Atwood was able to view the comments and pictures that Plaintiff posted on her Facebook page.  (*Id.* at ¶ 5.)  During Plaintiff's employment at Urgent Dental, Plaintiff frequently posted comments and pictures on her Facebook page, including comments and pictures regarding Urgent Dental and the Atwoods.  (*Id.* at ¶ 6.)

Throughout her employment at Urgent Dental, Plaintiff posted comments on her Facebook page about how much she enjoyed her job and that Urgent Dental was a great place to work.  (*Id.* at ¶ 7.)  In addition, Plaintiff posted comments that Dr. Atwood was a great boss and that she loved working with him.  (*Id.* at ¶ 8.)  Ms. Atwood continued to view Plaintiff's Facebook posts until Plaintiff "un-friended" her in the fall of 2011, around the same time that Plaintiff retained Cohen & Padda.  (*Id.* at ¶ 10.)  Unfortunately, Ms. Atwood did not print out or save the positive comments that Plaintiff made regarding her employment at Urgent Dental. (*Id.* at ¶ 11.)

On May 8, 2013, Urgent Dental served its first set of Requests for Production of Documents on Plaintiff.  (*See* Rosenthal Declaration at ¶ 6.)  The Requests required Plaintiff to

---

[2] Plaintiff testified at her deposition that the contents of her Complaint were truthful and accurate; however, the Complaint falsely alleges that the incident occurred in *August 2011*.  The reality is that all documents, including Plaintiff's own text messages, point to the date as being *May 29, 2011*, three months earlier.

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
(702) 257-1483

2459024

produce all text messages sent and/or received related to Urgent Dental, Dr. Atwood, and Kelli Atwood from July 1, 2010 to the present.[3] (*See* Rosenthal Declaration at ¶ 7 and Defendant Atwood Urgent Dental Care, PLLC's First Set of Requests for Production to Plaintiff at Request Nos. 2-4, attached to the Rosenthal Declaration as Exhibit D.) In addition, the Requests required Plaintiff to produce all posts and/or messages that Plaintiff made on social media websites, including Facebook, Myspace and Twitter, from July 1, 2010 to the present, related to Urgent Dental, Dr. Atwood, and Kelli Atwood. (*See* Exhibit D at Request Nos. 5-7.)

On June 20, 2013, the Atwood Defendants served subpoenas upon Cristina Rivadeneira[4] and Veronica Painter. (*See* Rosenthal Declaration at ¶ 8.) In addition to scheduling Cristina Rivadeneira's and Veronica Painter's depositions, the subpoenas also required production of the documents set forth in Exhibit A attached thereto. (*Id.*) Specifically, Exhibit A to Cristina Rivadeneira's subpoena required production of all text messages sent and/or received related to Dr. Atwood, Kelli Atwood, and Urgent Dental from March 1, 2009 to the present.[5] (*See* Rosenthal Declaration at ¶ 9 and Subpoena to Cristina Rivadeneira at Nos. 1-3, attached to the Rosenthal Declaration as Exhibit E.) Exhibit A further required Cristina Rivadeneira to produce all posts and/or messages that Cristina Rivadeneira made on social media websites, including Facebook, Myspace and Twitter, from March 1, 2009 to the present, related to Urgent Dental, Dr. Atwood, and Kelli Atwood. (*Id.* at Nos. 4-6.)

Similarly, Exhibit A to Veronica Painter's subpoena required production of all text messages sent and/or received related to Dr. Atwood, Kelli Atwood, and Urgent Dental from

---

[3] Plaintiff began working at Urgent Dental in July 2010.

[4] Ms. Rivadeneira is also represented by Cohen & Padda.

[5] Cristina Rivadeneira began working at Urgent Dental in March 2009.

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
(702) 257-1483

2459024

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
(702) 257-1483

July 1, 2010 to the present.[6] (*See* Rosenthal Declaration at ¶ 10 and Subpoena to Veronica Painter at Nos. 1-3, attached to the Rosenthal Declaration as Exhibit F.) Exhibit A further required Veronica Painter to produce all posts and/or messages that Veronica made on social media websites, including Facebook, Myspace and Twitter, from July 1, 2010 to the present, related to Urgent Dental, Dr. Atwood, and Kelli Atwood. (*Id.* at Nos. 4-6.)

Plaintiff has attempted to restrict the Atwood Defendants' access to relevant evidence throughout discovery. As the Court may recall, Plaintiff failed to produce responses to Urgent Dental's written discovery until after a Motion to Compel had been filed (*See* Dkt. No. 35.); and refused to allow the Atwood Defendants' expert to conduct an independent psychological examination upon Plaintiff in excess of ninety (90) minutes until the Court ordered her to do so. (*See* Dkt. No. 53.)

Plaintiff's efforts to deprive the Atwood Defendants of access to the requested text messages and social media posts were no different. In fact, Cristina Rivadeneira testified that Plaintiff's attorney's secretary told her not to worry about producing the Exhibit A documents:

> Q. And Exhibit A attached to the deposition subpoena ordered you to bring documents, any documents in response to Numbers 1 through 10. Is it your testimony that you didn't believe that bringing any documents that you may have in response to Numbers 1 through 10 wasn't required?
>
> A. Well, yesterday when I called the attorney's assistant, they told me not to worry about that. I was told not to worry about that.[7]

(*See* Cristina Rivadeneira's Deposition Transcript at 16:8-16, attached to the Rosenthal Declaration as Exhibit G.)

---

[6] Veronica Painter began working at Urgent Dental in July 2010.

[7] Ms. Rivadeneira is also represented by Cohen & Padda. (*See* Exhibit G at 215:24-216:3.)

2459024

**Howard & Howard Attorneys PLLC**
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
(702) 257-1483

Similarly, Veronica Painter testified that she took no steps to try to recover the requested text messages:

> Q. Did you contact your carrier at any point in time to see if you could recover or access more than just the two text messages that you brought here today?
> A. No.
> Q. Why not?
> A. I thought these two were efficient.
> Q. You thought these two were just sufficient?
> A. Uh-huh.
> Q. Is that a yes?
> A. Yes. Sorry.

(*See* Exhibit B at 17:5-14.)

At the depositions of Plaintiff, Cristina Rivadeneira, and Veronica Painter, the Atwood Defendants' counsel questioned the three (3) regarding the status of the requested documents. With regard to the requested text messages, Plaintiff testified that she deleted some of the text messages *after* she retained counsel:

> Q. When was that? (Discussing when Plaintiff replaced her Droid 2)
> A. I think it was probably in October of 2011 maybe, I think. I don't know.
> Q. So at that point you had already retained counsel, right?
> A. Yes.

(*See* Exhibit A at 145:1-6)

> * * *
> Q. And yet you did not retain those texts?
> A. Like I said, I randomly delete them. How would I be able to get them if they're not on my phone?
> Q. Did you delete any texts after you left Urgent Dental?
> A. No.
> Q. So the only texts that you deleted occurred during your employment at Urgent Dental?
> A. Correct.

(*Id.* at 145:9-17)

2459024

8

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
(702) 257-1483

Likewise, Plaintiff testified that she deleted content from her Facebook page *after* she retained counsel:

> Q. Do you know why your Facebook page no longer contains or contained those pictures after the litigation started?
> A. I randomly delete albums on my Facebook on a constant basis so.
> * * *
> Q. You deleted these pictures which are marked as Defendant's Exhibit C after you retained counsel, correct?
> A. Sometime after that I'm sure. I don't know when exactly.

(*Id.* at 156:13-17 and 156:25-157:4)

Cristina Rivadeneira also testified that she did not preserve all of the relevant text messages that were sought by the Atwood Defendants:

> Q. You previously testified that you sent and/or received text messages to or from other people besides Dr. Atwood regarding Dr. Atwood and Urgent Dental. Do you recall testifying to that?
> A. Yes.
> Q. Specifically, you testified that you sent or received text messages from or to Edna, Nadia, Heather, Veronica, Ellie, Thelma, Julie, Fernanda and Tracy and Santiago. Why were none of those text messages produced?
> A. I no longer have the text messages from the people you just mentioned.
> Q. You no longer have text messages that you sent to any of those people?
> A. From some of those individuals I no longer have them because I changed my phone number or I changed the telephone. I changed my telephone.

(*See* Exhibit F at 118:14-119:5)

Given Plaintiff's conduct throughout this litigation, it was not all that surprising when Ms. Rivadeneira testified that the only text messages that she saved were those exchanged between herself and Dr. Atwood:

> Q. You did not look for text messages to or from anybody else, other than those people we have already discussed,

2459024

9

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
(702) 257-1483

regarding Kelli Atwood, Dr. Aaron Atwood or Urgent Dental from March 1, 2009 to the present, isn't that right?

A. Yes, but most of the text messages from – the text messages from most of the people that you have mentioned to me I no longer have those text messages on my phone.

Q. I understand that. If you have those on your computer, or your phone, or any other location, you need to produce those documents. Again, I'm not interested in text messages that you might have sent to any of those people or anybody else that don't concern Kelli Atwood, Aaron Atwood or Urgent Dental.

A. Okay. That's why I'm telling you that the only ones that I saved and I have are from Dr. Atwood because he was my boss and I needed to save them. From the other people, no.

(*Id.* at 125:4-23)

Finally, Veronica Painter testified that she produced all of the text messages that she had but did not recall if she produced all of the text messages that she sent or received related to Urgent Dental, Dr. Atwood, and Kelli Atwood because her phone broke in the summer of 2011, "coincidentally" around the same time that Plaintiff and Veronica Painter met with Cohen & Padda. (*See* Exhibit B at 15:14-16:22)

Plaintiff's failure to preserve the text messages and Facebook posts related to Urgent Dental, Dr. Atwood, and Kelli Atwood warrants spoliation sanctions. Moreover, because Cristina Rivadeneira and Veronica Painter are also represented by Plaintiff's attorney, and therefore knew or should have known of their preservation duties, their failure to retain text messages and posts related to Urgent Dental, Dr. Atwood, and Kelli Atwood is similarly sanctionable. Accordingly, the Atwood Defendants request that this Court dismiss Plaintiff's Complaint for spoliation of evidence or, at a minimum, issue an adverse evidentiary inference.

The Atwood Defendants' counsel has complied with the requirements of LR 26-7 in filing this motion, as its attempts to resolve this issue without Court action have been unsuccessful. (*See* Rosenthal Declaration at ¶¶ 12-13.)

2459024

A.    **LEGAL STANDARD**

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending, or reasonably foreseeable litigation." *Shakespear v. Wal-Mart Stores, Inc.*, 2013 WL 3270545, *1 (D. Nev. June 26, 2013) (citing *U.S. v. Kitsap Physicians Sys.*, 314 F.3d 995, 1001 (9th Cir. 2002) (internal citation omitted)).  A party engages in spoliation as a matter of law only if it had some notice that the evidence was potentially relevant to the litigation before it was destroyed.  *Id.* (citing *Akiona v. U.S.*, 938 F.2d 158, 161 (9th Cir. 1991) (internal citation omitted).  A party has a duty to preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence.  *Id.*

The Federal Court has the ability to impose sanctions for spoliation arising from the Court's "inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct 'which abuses the judicial process.'"  *Holiday v. American Casualty Co. of Reading, PA*, 2013 WL 1955561, *2 (D. Nev. May 10, 2013) (quoting *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)).  Prior to imposing sanctions, however, the Court must make a finding of fault.  *Id.*  Where the Court finds fault, the Court should impose the appropriate sanction which serves "the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine."  *Id.* (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (internal quotation omitted)).

Courts have imposed spoliation sanctions in cases similar to the instant matter.  For example, in *Gatto v. United Air Lines, Inc.*, 2013 WL 1285285 (D.N.J. March 25, 2013), the plaintiff was injured in the course of his employment and filed a personal injury lawsuit.  *Id.* at

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
(702) 257-1483

2459024

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
(702) 257-1483

*1. Defendants sought documents and information related to social media accounts maintained by plaintiff, including Facebook. *Id.* During the course of discovery, plaintiff deactivated his Facebook account, resulting in all data and information being lost. *Id.* at *2. Defendants filed a Motion for Spoliation Sanctions, arguing that the contents of the Facebook account contained comments and photographs that contradicted plaintiff's claims and deposition testimony. *Id.* The Court found that plaintiff had a duty to preserve his Facebook account because: (1) the Facebook account was clearly within his control, as he had the authority to add, delete or modify the account's content; (2) the Facebook account was relevant to the litigation, as plaintiff alleged that his injuries limited his ability to work and engage in social and physical activities; (3) the information sought focused on posts, comments and updates made by plaintiff subsequent to the date of the alleged accident; and (4) it was reasonably foreseeable that plaintiff's Facebook account would be sought in discovery since defendants requested the information five months prior to plaintiff's deactivation of the account. *Id.* at *3. Accordingly, the Court held that the defendants were prejudiced by the destruction of the evidence and concluded that an adverse inference instruction was appropriate. *Id.* at *4-5.

**B.** **PLAINTIFF AND NON-PARTY WITNESSES UNDER PLAINTIFF AND PLAINTIFF'S ATTORNEY'S CONTROL ARE RESPONSIBLE FOR THE DESTRUCTION OF RELEVANT EVIDENCE.**

"With respect to a party's duty to preserve material evidence, even if the party does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence." *Holiday*, 2013 WL 1955561 at *2 (citing *Andersen v. Schwartz*, 687 N.Y.S.2d 232, 234-35 (N.Y.Sup.Ct. 1999)); *see also Wm. T. Thompson Co. v. General Nutrition Corp., Inc.*, 593 F.Supp. 1443, 1455 (C.D. Cal. 1984) ("While a litigant is

2459024

12

**Howard & Howard Attorneys PLLC**
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
(702) 257-1483

under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.").

Here, Plaintiff testified that she initially met with the law firm of Cohen & Padda in late June or early July 2011. Veronica Painter, who is also represented by Cohen & Padda, accompanied Plaintiff to the June/July 2011 appointment. Therefore, Plaintiff and Veronica Painter should have known that they needed to preserve documents or other evidence that were reasonably calculated to lead to the discovery of admissible evidence. Moreover, in her Complaint, Plaintiff cites a text message that was purportedly sent to her by Dr. Atwood on the night of the alleged incident, in which Dr. Atwood stated, "I feel so bad. I'm sorry! You are a great employee and friend. I'm sorry I pissed you off. Please forgive me." In other words, while Plaintiff obviously believed that this text message was relevant and supported her claim, she apparently believed that she could delete other text messages and her Facebook posts without any repercussions.

Similarly, Plaintiff's step-mother, Veronica Painter, despite meeting with Cohen & Padda in late June or early July 2011, took no steps to preserve her text messages. In fact, she testified that her cell phone broke in the summer of 2011, but she did not take any steps to try to recover the text messages. Veronica Painter's failure preserve or even attempt to recover the text messages can only be construed as an admission that the text messages would be contrary to Plaintiff's interests. After all, one would expect that someone whose stepdaughter was assaulted in the manner alleged by Plaintiff would take every step possible to recover evidence that could help Plaintiff's claims.

2459024

Further, Cristina Rivadeneira, who is also represented by Cohen & Padda, testified that she was no longer in possession of the text messages that she sent and/or received related to Urgent Dental, Dr. Atwood, and Kelli Atwood. Ironically, despite testifying that she exchanged text messages with at least _nine_ other employees regarding Dr. Atwood, Ms. Rivadeneira only retained the text messages that she sent to and/or received from Dr. Atwood. The only reasonable conclusion which can be drawn is that the text messages sent or received to the other nine individuals would be favorable to the Atwood Defendants.

Plaintiff, Cristina Rivadeneira, and Veronica Painter had an obligation to preserve documents relevant to this litigation. Despite their obligations, each testified that they were in possession of relevant evidence, but that the documents could no longer be located. Accordingly, Plaintiff, Cristina Rivadeneira, and Veronica Painter are at fault for the loss of the text messages and Facebook posts.

## C.   **THIS COURT SHOULD IMPOSE SPOLIATION SANCTIONS AGAINST PLAINTIFF.**

"There are two sources of authority under which the Court can sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who 'fails to obey an order to provide or permit discovery.'" _Holiday_, 2013 WL 1955561 at *2 (citing _Fjelstad v. Am. Honda Motor Co._, 762 F.2d 1334, 1337-38 (9th Cir. 1985)). The moving party must show that the missing evidence is critical to its case before a sanction will issue. _Id._ (citing _Nichols v. State Farm Fare and Casualty Co._, 6 P.3d 300, 304 (Alaska 2000) (internal citation omitted)).

2459024

14

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
(702) 257-1483

1.  **Plaintiff's Complaint Should be Dismissed as a Result of the Spoliation.**

"Dismissal is an available sanction when 'a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings' because 'courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Id.* (citing *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995) (internal citation omitted)).  In determining whether dismissal is the appropriate sanction, the Court must consider the following factors: (a) the public's interest in expeditious resolution of litigation; (b) the Court's need to manage its dockets; (c) the risk of prejudice to the party seeking sanctions; (d) the public policy favoring disposition of cases on their merits; and (e) the availability of less drastic sanctions. *Id.*

Dismissal of this action is appropriate because Plaintiff and her witnesses have made it a custom and practice to intentionally destroy evidence and to engage in gamesmanship with respect to discovery.  Dismissal would, therefore, promote the public's interest in expeditious resolution of the litigation.  Not only would dismissal save taxpayer money, it would eliminate the need for the service of jurors and the inconvenience and burden imposed on such jurors.  Furthermore, dismissal removes the case from the Court's docket, reducing Court congestion.  Accordingly, these two factors weigh in favor of dismissal.

The prejudice element "looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Holiday*, 2013 WL 1955561 at *4 (citing *U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co., Inc.*, 857 F.2d 600, 604 (9th Cir. 1988) (internal citation omitted)).  In *Anheuser-Busch*, the Ninth Circuit found prejudice when a party's refusal to provide certain

2459024

15

documents "forced Anheuser to rely on incomplete and spotty evidence" at trial. *Anheuser-Busch*, 69 F.3d at 348.

The Atwood Defendants are greatly prejudiced by the destruction of evidence by Plaintiff, Cristina Rivadeneira, and Veronica Painter. As set forth in the Atwood Declaration, Plaintiff posted comments on her Facebook page throughout her employment with Urgent Dental about what a great place Urgent Dental was to work and how much she enjoyed working with Dr. Atwood. These Facebook posts contradict Plaintiff's claims that the working environment was so intolerable that she was forced to resign. In addition, Plaintiff's posts that she enjoyed working with Dr. Atwood contradict Plaintiff's claims that Dr. Atwood engaged in extreme and outrageous conduct throughout her employment at Urgent Dental. Moreover, since Plaintiff clearly deleted Facebook posts that were detrimental to her lawsuit, it is likely that the text messages which Plaintiff admittedly deleted were injurious to her claims.

Further, the timing of Veronica Painter's cell phone "breakage" – when Plaintiff and Veronica Painter first met with Cohen & Padda – is incredibly suspicious. Additionally, her failure to attempt to recover the text messages from her "broken" phone should be construed as an admission that they would only damage Plaintiff's claims, as they would likely confirm how much Veronica and Plaintiff enjoyed working at Urgent Dental and how good Dr. Atwood was to them.

Finally, the text messages from Cristina Rivadeneira's phone would likely detail the playful nature of the relationship between Plaintiff and Dr. Atwood and set forth Ms. Rivadeneira's suspicions regarding an affair between Plaintiff and Dr. Atwood.

Allowing Plaintiff and other witnesses represented by Plaintiff's counsel to act as the gatekeeper of evidence and pick and choose which text messages and Facebook posts are

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
(702) 257-1483

2459024

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
(702) 257-1483

produced and which text messages and Facebook posts are deleted and not available for this litigation forces the Atwood Defendants to rely upon incomplete evidence at trial. Accordingly, the prejudice element weighs in favor of dismissal.

While the public policy favoring disposition of cases on their merits might weigh against dismissal, less drastic sanctions are not available to remedy the blatant destruction of relevant evidence in this matter. Plaintiff, Cristina Rivadeneira, and Veronica Painter have been aware of the allegations against the Atwood Defendants since at least mid-2011. Yet, no precautions were taken to ensure that relevant documents and information were not lost. Moreover, Plaintiff even testified that she personally deleted text messages and Facebook posts that were in her control <u>after</u> she retained counsel. As a result of the actions taken by these individuals, the Atwood Defendants must attempt to defend against Plaintiff's serious allegations without key pieces of evidence. A less drastic sanction, therefore, cannot remedy this situation.

As four of the five factors weigh in favor of dismissal, this Court should dismiss Plaintiff's Complaint and establish a precedent that destruction of evidence will not be tolerated.

## 2.  **In the Alternative, This Court Should Issue an Adverse Inference.**

"A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). The Court has the discretion to sanction a responsible party by instructing the jury that it may infer the spoliated evidence would have been unfavorable to the responsible party. *Id.* An adverse inference instruction may be given upon a finding that the evidence was destroyed after a party was on notice of the potential

2459024

relevance of the evidence to the litigation. *Id.*; *see also Akiona*, 938 F.2d at 161 ("a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy the [evidence] is more likely to have been threatened by the [evidence] than is a party in the same position who does not destroy the [evidence]" (quoting *Welsh v. U.S.*, 844 F.2d 1239, 1246 (6th Cir. 1988)).

Here, Plaintiff, Cristina Rivadeneira, and Veronica Painter destroyed relevant information after they were on notice or should have been on notice of their obligation to preserve potentially relevant information. *Particularly troubling is the fact that Plaintiff retained some text messages and Facebook posts while testifying that she deleted others.* The fact that Plaintiff chose to delete some text messages and Facebook posts while retaining others strongly suggests that Plaintiff destroyed evidence that was harmful to her claims.

The destroyed information was in the control of Plaintiff, Cristina Rivadeneira, and Veronica Painter, who all shared the same counsel. As a result of the actions taken by these individuals, the text messages and Facebook posts sought by the Atwood Defendants are no longer available for the Atwood Defendants to use in their defense of Plaintiff's claims. Accordingly, as in *Gatto*, this Court should find that the Atwood Defendants are prejudiced by the destruction of the evidence and give an adverse inference instruction.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
(702) 257-1483

2459024

## IV.
## CONCLUSION

For the foregoing reasons, the Atwood Defendants seek an order dismissing Plaintiff's

Complaint for spoliation of evidence. In the event the Court is not inclined to dismiss

Plaintiff's Complaint, the Atwood Defendants seek an adverse inference instruction that the

evidence destroyed by Plaintiff, Cristina Rivadeneira and Veronica Painter was contrary to

Plaintiff's interest.

DATED this 16th day of January 2014.

HOWARD & HOWARD ATTORNEYS PLLC


By: /s/ Robert Rosenthal
Robert Rosenthal, Esq.
Jason P. Rosenthal, Esq.
3800 Howard Hughes Pkwy, Ste. 1000
Las Vegas, Nevada 89169
*Attorneys for Defendants, Counterclaimant
and Third-Party Plaintiff*

2459024

## DECLARATION OF KELLI ATWOOD

I, Kelli Atwood, declare:

1.     I am the wife of Defendant Aaron Atwood, D.D.S. ("Dr. Atwood") and co-owner of Defendant Atwood Urgent Dental Care, PLLC ("Urgent Dental").

2.     I manage the business aspects of Urgent Dental, including supervision of the employees, managing human resources, payroll, bookkeeping, and making sure that the office runs efficiently and effectively.

3.     I maintained these roles throughout Plaintiff Heather Painter's ("Plaintiff") entire employment with Urgent Dental.

4.     During Plaintiff's employment with Urgent Dental, Plaintiff and I were "friends" on Facebook.

5.     As a result of our "friend" status on Facebook, I was able to see the comments and pictures that Plaintiff posted on her Facebook page.

6.     During her employment with Urgent Dental, Plaintiff frequently posted comments and pictures, including comments and pictures regarding Urgent Dental and my family.

7.     Among Plaintiff's many posts were comments about how great it was working at Urgent Dental and how much she enjoyed her job.

8.     In addition, Plaintiff posted comments about how she loved working with my husband, Dr. Atwood.

9.     Plaintiff made these types of posts throughout her employment at Urgent Dental.

10.     I continued to view Plaintiff's Facebook posts until she un-friended me in the fall of 2011.

11.     Unfortunately, I did not print out or save the positive comments that Plaintiff made regarding her employment at Urgent Dental.

12.     The Requests for Production that Urgent Dental served upon Plaintiff specifically requested the production of **all** posts and/or messages that Plaintiff made on social media websites from July 1, 2010 to the present that related to Urgent Dental and/or my family.

13.     Plaintiff has not produced all of the comments and statements related to my husband and Urgent Dental that I saw on her Facebook page.

14.     Plaintiff deleted the content related to Urgent Dental and/or my family from her Facebook page after she retained counsel and threatened to file suit.

15.     As a result of Plaintiff's actions, we are not able to obtain all of the Facebook posts that Plaintiff made related to Urgent Dental and/or my family, including her comments about what a great place Urgent Dental was to work and how my husband, Dr. Atwood, was a terrific boss.

16.     Plaintiff should be punished for failing to preserve this crucial and very relevant evidence.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and if called upon as a witness I could and would competently testify thereto.

Dated: January 15, 2014.

Kelli Atwood

# DECLARATION OF ROBERT ROSENTHAL

I, Robert Rosenthal, declare:

1.      I am an attorney with the law firm of Howard & Howard Attorneys PLLC and represent Defendants, Atwood Urgent Dental Care, PLLC and Aaron Atwood, D.D.S., with respect to the subject Motion for Spoliation Sanctions for Destruction of Text Messages and Social Media Posts.

2.      Attached hereto as Exhibit A are true and correct copies of relevant portions of Plaintiff's Deposition Transcript.

3.      Attached hereto as Exhibit B are true and correct copies relevant portions of Veronica Painter's Deposition Transcript.

4.      In August 2011, Plaintiff's attorney called the Atwood Defendants, stated that she represented Plaintiff, and presented a demand. The Atwood Defendants then retained me, and I proceeded to speak to Plaintiff's attorney, Ruth Cohen. During my conversation with Ms. Cohen, I advised her that Plaintiff was precluded from bringing employment discrimination claims under Title VII because Urgent Dental did not have fifteen or more employees. I did not hear anything further from Plaintiff or her counsel until Plaintiff filed the subject Complaint approximately eleven months later on July 10, 2012.

5.      On July 10, 2012, Plaintiff filed her Complaint. Attached hereto as Exhibit C is a true and correct copy of Plaintiff's Complaint. As support for her claims, Plaintiff relies upon a text message purportedly sent to her by Dr. Atwood, in which Dr. Atwood stated: "I feel so bad. I'm sorry! You are a great employee and friend. I'm sorry I pissed you off. Please forgive me." (*Id.* at ¶ 18.)

6.     On May 8, 2013, Defendant Atwood Urgent Dental Care, PLLC served its first set of Requests for Production of Documents on Plaintiff.

7.     Attached hereto as Exhibit D is a true and correct copy of Defendant Atwood Urgent Dental Care, PLLC's First Set of Requests for Production to Plaintiff. The following Requests are relevant to the instant Motion:

**REQUEST NO. 2:**

Produce all text messages that YOU have sent or received RELATED TO YOUR employment with Atwood Urgent Dental Care, PLLC from July 1, 2010 to the present.

**REQUEST NO. 3:**

Produce all text messages that YOU have sent or received RELATED TO Dr. Aaron Atwood from July 1, 2010 to the present.

**REQUEST NO. 4:**

Produce all text messages that YOU have sent or received RELATED TO Kelli Atwood from July 1, 2010 to the present.

**REQUEST NO. 5:**

Produce ANY posts and/or messages that YOU have made on social media websites, including but not limited to, Facebook, Myspace, and Twitter, from July 1, 2010 to the present, RELATED TO YOUR employment with Atwood Urgent Dental Care, PLLC.

**REQUEST NO. 6:**

Produce ANY posts and/or messages that YOU have made on social media websites, including but not limited to, Facebook, Myspace, and Twitter, from July 1, 2010 to the present, RELATED TO Dr. Aaron Atwood.

**REQUEST NO. 7:**

Produce ANY posts and/or messages that YOU have made on social media websites, including but not limited to, Facebook, Myspace, and Twitter, from July 1, 2010 to the present, RELATED TO Kelli Atwood.

8.    On June 20, 2013, the Atwood Defendants served subpoenas upon Cristina Rivadeneira and Veronica Painter, through their counsel, the law firm of Cohen & Padda, LLP. In addition to scheduling Cristina Rivadeneira's and Veronica Painter's depositions, the subpoenas contained document requests set forth in Exhibit A attached thereto.

9.    Attached hereto as Exhibit E is a true and correct copy of the subpoena served upon Cristina Rivadeneria.  The following document requests contained within Exhibit A are relevant to the instant Motion:

1. Produce copies of all text messages that you have sent or received related to Dr. Aaron Atwood from March 1, 2009 to the present;

2. Produce copies of all text messages that you have sent or received related to Kelli Atwood from March 1, 2009 to the present;

3. Produce copies of all text messages that you have sent or received related to your employment with Atwood Urgent Dental Care, PLLC;

4. Produce copies of all posts and/or messages that you have made on social media websites, including but not limited to, Facebook, Myspace, and Twitter, from March 1, 2009 to the present, related to your employment with Atwood Urgent Dental Care, PLLC;

5. Produce copies of all posts and/or messages that you have made on social media websites, including but not limited to, Facebook, Myspace, and Twitter, from March 1, 2009 to the present, related to Dr. Aaron Atwood;

6. Produce copies of all posts and/or messages that you have made on social media websites, including but not limited to, Facebook, Myspace, and Twitter, from March 1, 2009 to the present, related to Kelli Atwood.

10.     Attached hereto as Exhibit F is a true and correct copy of the subpoena served upon Veronica Painter. The following document requests are relevant to the instant Motion:

1. Produce copies of all text messages that you have sent or received related to Dr. Aaron Atwood from July 1, 2010 to the present;

2. Produce copies of all text messages that you have sent or received related to Kelli Atwood from July 1, 2010 to the present;

3. Produce copies of all text messages that you have sent or received related to your employment with Atwood Urgent Dental Care, PLLC;

4. Produce copies of all posts and/or messages that you have made on social media websites, including but not limited to, Facebook, Myspace, and Twitter, from July 1, 2010 to the present, related to your employment with Atwood Urgent Dental Care, PLLC;

5. Produce copies of all posts and/or messages that you have made on social media websites, including but not limited to, Facebook, Myspace, and Twitter, from July 1, 2010 to the present, related to Dr. Aaron Atwood;

6. Produce copies of all posts and/or messages that you have made on social media websites, including but not limited to, Facebook, Myspace, and Twitter, from July 1, 2010 to the present, related to Kelli Atwood.

11.     Attached hereto as Exhibit G are relevant portions of Cristina Rivadeneira's Deposition Transcript.

12.     I have complied with the requirements of LR 26-7 in filing this Motion, as the attempts to resolve this issue without Court intervention have been unsuccessful.

13.     On December 17, 2013, I spoke with Plaintiff's attorney, Ruth Cohen, regarding the fact that the Atwood Defendants intended on filing a Motion for Spoliation Sanctions. In addition, I sent Ms. Cohen a follow-up email memorializing our conversation. A true and correct copy of the email is attached hereto as Exhibit H.

14.     All counsel will be notified of this Motion through the Court's electronic filing and service system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and if called upon as a witness I could and would competently testify thereto.

Dated: January 16, 2014

_____
Robert Rosenthal

EXHIBIT A

1        UNITED STATES DISTRICT COURT

2          DISTRICT OF NEVADA

3

4   HEATHER PAINTER,         )
                          )

5        Plaintiff,     )
                          )

6   vs.                   ) Case No.
                          ) 2:12-cv-01215-JCM-RJJ

7   AARON ATWOOD, D.D.S.;    )
   and ATWOOD URGENT DENTAL   )

8   CARE, PLLC,           )
                          )

9       Defendants.    )

10  _____

11

12

13

14    VIDEOTAPE DEPOSITION OF HEATHER PAINTER

15          Las Vegas, Nevada

16        Friday, October 18, 2013

17            Volume 1

18

19

20

21

22  Reported by:
   CHRISTY I. PHELPS

23  CCR No. 683

24  Job No. 1751846

25  PAGES 1 - 262

Veritext National Deposition & Litigation Services
877-955-3855

1    referred to the Atwoods after you stopped working at

2    Urgent Dental?

3      A   No.

4      Q   So is it your testimony that everything that

5    you've ever posted on Facebook or Instagram which

6    referred to the Atwoods or Urgent Dental has been

7    produced in this case?

8      A   Yes.

9      Q   Have you ever sued anybody before?

10      A   No.

11      Q   Have you ever filed a claim against anybody

12    before?

13      A   No.

14      Q   Have you ever been sued before?

15      A   No.

16      Q   Periodically through the day I might be

17    presenting you with documents and things like that.  So

18    we're going to mark them as exhibits.

19         And so my first exhibit of the day is Defendant's

20    Exhibit A.

21           (Exhibit A marked for identification.)

22    BY MR. ROSENTHAL:

23      Q   I'd like to show you what's been marked as

24    Defense Exhibit A, which is the complaint that was filed

25    on your behalf in the Federal District Court here in

```
 1    Nevada.  Do you see that?

 2        A    Uh-huh, yes.

 3        Q    Have you ever seen that document before?

 4        A    Yes.

 5        Q    I'd like you to take a minute and review the

 6    complaint that was filed on your behalf and let me know

 7    if everything in the complaint is truthful and accurate.

 8        A    Okay.

 9             (Witness reviewing document.)

10             THE WITNESS:  Yeah, yes.

11    BY MR. ROSENTHAL:

12        Q    Okay.  So is your testimony everything that is

13    contained in the complaint is truthful and accurate?

14        A    Yes.

15        Q    Have you ever been convicted of a felony?

16        A    No.

17        Q    Have you ever been arrested?

18        A    No.

19        Q    Have you ever been arrested for DUI?

20        A    No.

21        Q    Have you ever been pulled over for a DUI?

22        A    No.

23             MS. COHEN:  Objection.

24    BY MR. ROSENTHAL:

25        Q    Did you graduate high school?
```

Page 17

```
 1      Q   When was that?

 2      A   I think it was probably in October of 2011 maybe,

 3   I think.  I don't know.

 4      Q   So at that point you had already retained

 5   counsel, right?

 6      A   Yes.

 7      Q   Okay.

 8      A   I believe so.

 9      Q   And yet you didn't retain those texts?

10      A   Like I said, I randomly would delete them.  How

11   would I be able to get them if they're not on my phone?

12      Q   Did you delete any texts after you left Urgent

13   Dental?

14      A   No.

15      Q   So the only texts that you deleted occurred

16   during your employment at Urgent Dental?

17      A   Correct.

18      Q   And you realize that texts that you have

19   complaining about Dr. Atwood that you sent to Ryan would

20   help your case, right?

21      A   Oh, yeah.

22      Q   And yet you have not asked for them?

23      A   I can't get them.  Verizon -- we tried.

24      Q   You have not asked Ryan to try to get those texts

25   for you, right?
```

Page 145

```
1      Q    Was that taken during the cruise?

2      A    Yeah, and on the import of ardive, I believe.

3      Q    Did you post this picture on your Facebook page?

4      A    Yes.

5      Q    Was the second picture taken during the cruise?

6      A    Yes, it was.

7      Q    Did you ever show either of these pictures to Dr.

8  Atwood?

9      A    No.

10      Q    Was the second picture posted on your Facebook

11  page?

12      A    I believe so, yes.

13      Q    Do you know why your Facebook page no longer

14  contains or contained those pictures after the

15  litigation started?

16      A    I randomly delete albums on my Facebook on a

17  constant basis so.

18      Q    Do you know you're under a legal obligation not

19  to delete or remove anything that might be relevant to

20  this litigation?  Were you aware of that?

21      A    No.  I didn't --

22           MS. COHEN:  There's no question pending.

23           THE WITNESS:  Okay.

24  BY MR. ROSENTHAL:

25      Q    You deleted these pictures which are marked as
```

Page 156

```
 1    Defendant's Exhibit C after you retained counsel,

 2    correct?

 3        A    Sometime after that I'm sure.  I don't know when

 4    exactly.

 5        Q    Do you recall on the evening of May 29, 2011,

 6    being asked by Dr. Atwood to assist him on an

 7    after-hours call?

 8        A    Yes.

 9        Q    Didn't you also post pictures on Facebook and

10    Instagram of pictures of you in a pink dress?

11        A    Yes, I still have them on my Facebook.

12        Q    All of them?

13        A    I am not certain of that.

14        Q    Do you recall approximately what time of night on

15    May 29, 2011 that you were asked help Dr. Atwood with an

16    after-hours client or patient?

17        A    Um, I don't know the exact time.  Maybe -- I

18    don't know.  I don't remember.

19        Q    Was it after 10:00 o'clock?

20        A    Sure.  I don't know for certain.

21        Q    Okay.

22             MR. ROSENTHAL:  I'd like this next document

23    marked Exhibit D.

24             (Exhibit D marked for identification.)

25    BY MR. ROSENTHAL:
```

Page 157

```
 1      Q   Can you give me a general date as to when you
 2  first consulted with an attorney?
 3      A   I believe it was the end of June or early July.
 4  I don't recall the exact date.
 5      Q   Did someone suggest to you that you should
 6  contact an attorney about what took place at Urgent
 7  Dental?
 8      A   No.  That was my decision.
 9      Q   Who did you consult with?  Which attorney?
10      A   Ruth.
11      Q   Did you consult with any other attorneys before
12  Ruth?
13      A   No.
14      Q   Did you consult with any other attorneys other
15  than Ruth or people that work at Ruth's firm?
16      A   No.
17      Q   How did you find out about Ruth's services?
18      A   I looked up lawyers online.
19      Q   Did any of your family members suggest that you
20  contact an attorney?
21      A   No.
22      Q   Did you tell any of your family members that you
23  were looking to sue Urgent Dental?
24      A   I just talked to Veronica about it.
25      Q   What did Veronica say?
```

Page 223

EXHIBIT B

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | DISTRICT OF NEVADA |
| 3 | |
| 4 | HEATHER PAINTER,       ) |
| | ) |
| 5 | Plaintiff,     ) |
| | ) |
| 6 | vs.                   ) Case No. |
| | ) 2:12-cv-01215-JCM-RJJ |
| 7 | AARON ATWOOD, D.D.S.;    ) |
| | and ATWOOD URGENT DENTAL  ) |
| 8 | CARE, PLLC,          ) |
| | ) |
| 9 | Defendants.    ) |

10
11
12 ─────────────────────────────────────
13
14     VIDEOTAPE DEPOSITION OF VERONICA PAINTER
15             Las Vegas, Nevada
16         Tuesday, October 22, 2013
17              Volume 1
18
19
20
21
22 Reported by:
    CHRISTY I. PHELPS
23 CCR No. 683
24 Job No. 1751847
25 PAGES 1 - 213

Page 1

```
1       A    6757 Broad Acres Ranch Street, Las Vegas, Nevada

2    89148.

3       Q    I know you're not a party to this action, but

4    just for the sake of clarity, are you represented here

5    today by an attorney?

6       A    No.  My daughter is, my stepdaughter.

7       Q    But do you have an attorney here today?

8       A    Oh, sorry.  Yes.

9       Q    Somebody representing you?

10      A    Ruth.

11      Q    Okay.  Have you ever had your deposition taken

12   before?

13      A    No.

14      Q    All right.  Before we get underway with the

15   substantive questions I have here today, I want to go

16   through some of the ground rules with you okay?

17      A    Okay.

18      Q    Although you might have had an opportunity to

19   discuss these with your attorney, I still want to go

20   over them with you on the record.  All right?

21      A    Sure.

22      Q    First you took an oath here, do you remember

23   that, just a few moments ago?

24      A    Yes.

25      Q    That oath has the same force and effect as if you
```

Page 7

```
1            Do you see that?

2      A     Yes.

3      Q     Have you done that?

4      A     Yes.

5      Q     Okay.  Your attorney just handed you looks like

6   two photographs?

7      A     Yes.

8      Q     What are those?

9      A     Those are just photographs of my old phone.  It's

10  pretty much the only text message I have.

11     Q     When we take a break, I'll make copies of that,

12  okay?

13     A     Okay.

14     Q     Are there any other text messages that you have?

15     A     I don't have them.  This is all I have.

16     Q     Are there any other text messages that you have

17  or that you sent or received related to Dr. Aaron Atwood

18  from July 1, 2010 to the present?

19     A     No.

20     Q     Other than those two pictures?

21     A     No.

22     Q     Did you ever send any text messages to or from

23  Heather from July 1, 2010 to the present regarding Dr.

24  Aaron Atwood or Urgent Dental?

25     A     I don't recall.
```

Page 15

```
1      Q    Do you still have the same phone --

2      A    No.

3      Q    -- that you used?  What happened to your old

4   phone?

5      A    Broke.

6      Q    When was that?

7      A    I don't remember.  A while ago.

8      Q    Was it before July 1, 2010?

9      A    No.

10     Q    Was it in 2011?

11     A    I don't recall.

12     Q    Do you recall when you left Urgent Dental

13  generally?

14     A    Um, yes.

15     Q    Was that in 2011?

16     A    Yes.

17     Q    Was it in the summer of 2011?

18     A    Yes.

19     Q    Was it after the summer of 2011 that your phone

20  broke?

21     A    Yes.

22     Q    Did you continue to use the same carrier?

23     A    Yes.

24     Q    Do you still have the same phone number?

25     A    Yes.
```

Veritext National Deposition & Litigation Services
877-955-3855

```
1     Q   What cell number is that?

2     A   435-849-2227.

3     Q   Who is your carrier?

4     A   Page Plus.

5     Q   Did you contact your carrier at any point in time

6   to see if you could recover or access more than just the

7   two text messages that you brought here today?

8     A   No.

9     Q   Why not?

10    A   I thought these two were efficient.

11    Q   You thought these two were just sufficient?

12    A   Uh-huh.

13    Q   Is that a yes?

14    A   Yes.  Sorry.

15    Q   It's awkward because no one really talks that

16  way.  So it's lawyers' stuff.

17    A   I know.

18    Q   Do you believe that there are more text messages

19  that you sent or received related to Dr. Aaron Atwood or

20  Urgent Dental from July 1, 2010 to the present, other

21  than just these two, but you're not able to access

22  those?

23    A   No.

24    Q   So is it your testimony that, other than the

25  pictures that you brought here today, which I haven't
```

1      could be even longer than that. I don't recall.

2      Q   How did you come by going to Ruth's office? How

3      did you find her?

4      A   I think we just Googled. I Googled it. I just

5      wanted -- well, she didn't really know what to do and I

6      didn't either. I think it was through Google, just

7      researching.

8      Q   When you say, "we went to Ruth's office," who are

9      we talking about?

10      A   Me and Heather.

11      Q   Was anybody else with you?

12      A   And Ellie, Ellie went.

13      Q   Why did Ellie go with you?

14      A   Um, by that time Ellie had known that, um -- she

15      didn't know details, but she knew that something was

16      wrong. And she sensed it at work with me and confronted

17      me. And I kind of confronted Ellie and said something

18      is wrong at that time.

19      Q   So why did Ellie go with you to Ruth's office?

20      A   Just to support us, I guess.

21      Q   Did prior to that time, did Ellie ever tell you

22      that Dr. Atwood had acted inappropriately toward her?

23      A   I don't remember her saying that he acted

24      inappropriately toward her. But I recall she said that

25      she saw some things as well.

Page 172

EXHIBIT C

Ruth L. Cohen, Esq. (NV Bar No: 1782)
Email: rcohen@caplawyers.com
Paul S. Padda, Esq. (NV Bar No: 10417)
Email: ppadda@caplawyers.com
COHEN & PADDA, LLP
4240 West Flamingo Road, Suite 220
Las Vegas, Nevada 89103
Tele: (702) 366-1888
Fax: (702) 366-1940
Web: caplawyers.com

Attorneys for the Plaintiff

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| HEATHER PAINTER,<br><br>               **Plaintiff,**<br><br>    v.<br><br>**AARON ATWOOD, D.D.S.;**<br>**and ATWOOD URGENT**<br>**DENTAL CARE, PLLC,**<br><br>               **Defendants.** | Case No. *2:12-cv-01215-JCM-RJJ*<br><br>*DEMAND FOR JURY TRIAL* |

## COMPLAINT

This is a civil action seeking monetary and declaratory relief for violations of Plaintiff's common law rights.

### I.

### JURISDICTION, VENUE AND LEGAL BASIS FOR THIS ACTION

1.    This Court possesses jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff's claims exceed the sum of $75,000 and the dispute involves citizens of different states.

. . .

. . .

1    2.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 since

2  "a substantial part of the events or omissions giving rise to the claim[s] occurred" in

3  Nevada.

4    3.    Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

5    4.    This civil action is brought by Plaintiff pursuant to the common law of

6  Nevada.

7                                    II.

8                            **THE PARTIES**

9    5.    Plaintiff, "Heather Painter," ("Heather") is an adult individual (female)

10  currently residing in Arizona.

11    6.    Defendant, "Aaron M. Atwood," ("Dr. Atwood") is an adult individual (male)

12  currently residing in Clark County, Nevada.  Dr. Atwood, a licensed dentist, is being

13  sued herein for monetary damages and declaratory relief.

14    7.    Defendant "Atwood Urgent Dental Care, PLLC," is a corporation

15  registered in the State of Nevada.  Atwood Urgent Dental Care, PLLC is being sued

16  herein for monetary damages and declaratory relief.

17                                   III.

18                       **FACTUAL BACKGROUND**

19    8.    Heather commenced employment with Atwood Urgent Dental Care, PLLC

20  ("Atwood Urgent") in or around July 2010.  At the time, she was approximately 22-years

21  old.  She was hired by Dr. Atwood to serve as a dental assistant in his office, Atwood

22  Urgent.  Her duties included assisting Dr. Atwood with dental procedures as well as

23  office/clerical support.

24    9.    Atwood Urgent is a "24/7" dental practice and routinely Dr. Atwood would

25  service patients at late night hours.  Given the 24-hour nature of Las Vegas and the fact

26                                    2

1   that a significant portion of the population works during the evenings, Dr. Atwood hoped

2   to capitalize on a niche demographic.  Sometimes, Dr. Atwood would ask Heather to

3   assist him if he had to perform a procedure during the evening.

4         10.    Shortly after her commencement of employment with Atwood Urgent,

5   Dr. Atwood requested that Heather babysit his children from time to time.  Viewing it as

6   an additional opportunity to earn some money, and because she very much liked Dr.

7   Atwood's wife, Heather agreed.  At the time, Dr. Atwood's son was three years old and

8   his daughter was an infant.  Heather believed Dr. Atwood was a respectable and

9   trustworthy individual.  Moreover, Dr. Atwood, who only lived a short distance from

10  Heather and her family, was friendly towards her parents, whom he would see from

11  time to time at the local LDS temple.  Additionally, Heather's step-mother, Veronica

12  Painter ("Veronica"), also worked at Atwood Urgent.

13        11.    After a few months of employment, Dr. Atwood began to routinely engage

14  Heather in personal conversations focusing upon her dating life.  For example, he

15  would frequently inquire about what she did over the weekend and whether she went on

16  any dates.  On one occasion, Heather told Dr. Atwood that she had been asked out by

17  a young man her age and had gone on a date with him over the weekend.  Dr. Atwood

18  asked if she had performed "oral sex" on him.  Shocked and stunned by his comments,

19  Heather attempted to ignore him.  Dr. Atwood, apparently undeterred, began to steer

20  every conversation with Heather towards sex.

21        12.    Dr. Atwood's attempts at sexual banter were not focused upon Heather

22  alone.  During all time periods relevant to this lawsuit, Dr. Atwood would routinely inject

23  sexual innuendo into the work atmosphere through his interactions with other

24  employees.  For instance, he would often comment on the sexual anatomy of attractive

25  female clients and would speculate, out loud, whether they had breast surgery.  He

26                          3

1   would routinely look for opportunities to touch attractive female clients.  On those

2   occasions when he had to work on a male client whom he perceived to be a

3   homosexual, Dr. Atwood would profess his disgust.  This reinforced the view to some of

4   his female employees that Dr. Atwood viewed everything through the prism of sex.

5       13.    Over time, Dr. Atwood's sexual inquiries/conversations towards Heather

6   began to escalate to inappropriate physical touching.  On various occasions he would

7   touch her shoulders, glide a lint roller over her breasts and buttocks, physically grab at

8   her breasts or buttocks or put his hands on her arms.  Other employees in Atwood

9   Urgent observed this behavior and became concerned for Heather.

10      14.    Although she was his employee and the babysitter to his children, Heather

11  became increasingly uncomfortable in the presence of Dr. Atwood.  His behavior was

12  becoming more sexualized and aggressive.  For instance, on one occasion, while giving

13  Heather a ride home in his car, Dr. Atwood took her hand and placed it on his crotch.

14  Repulsed, Heather told Dr. Atwood, in a very angry tone, to "knock it off."  Believing this

15  would shame him, Heather believed he would stop.  Unfortunately, however, the

16  conduct continued.  At almost every opportunity available to him, Dr. Atwood would

17  attempt to inappropriately touch Heather, including an incident where he patted her on

18  the buttocks in the presence of other employees; resulting in awkward silence from the

19  other employees.  On other occasions, he would squirt water from a syringe towards

20  her chest and crotch area.  Other times he would ask her to come into his office and

21  then attempt to show her a sexually inappropriate video from the internet.

22      15.    Dr. Atwood's conduct towards Heather began to seriously affect her

23  mood and caused her to suffer depression.  Heather loved Dr. Atwood's children and

24  his wife very much and felt extremely conflicted about what to do, believing that if she

25  complained she would create turmoil in his family.  As a 22-year old (practically a child

26                                          4

1  herself), the emotional strain on Heather was enormous.  Although the victim of Dr.

2  Atwood's inappropriate conduct, Heather felt guilty and depressed because of her

3  attachment towards his children and wife.  Additionally, because Dr. Atwood occupied a

4  position of stature in the community and lived only a few houses down the street from

5  her parents, Heather was unsure how her complaints would be viewed.

6         16.    In August 2011, Dr. Atwood contacted Heather (who was staying with her

7  parents) and requested that she accompany him to the office late at night to work on a

8  patient.  Although apprehensive, she agreed.  After arriving at the office, the patient

9  was a "no show."  While Heather was turning off the equipment in preparation to leave,

10  Dr. Atwood asked her to come into his office where he was sitting.  When she entered

11  his office, he asked her to have a seat.  She sat on his sofa while he remained in his

12  office chair.  At that point, he stood up and stood over her as she remained on the

13  couch.  He began to undo his pants which caused Heather to say "No!"  Undettered, he

14  climbed on top of her while she remained on the sofa and held her arms down.  After

15  struggling for a few minutes, she was able to push him off and run out of the room.  Dr.

16  Atwood called for her to come back but she refused.  She left the premises of Atwood

17  Urgent.  Dr. Atwood came outside and told Heather we would give her a ride home.

18  Given that it was late at night and he was her only source of transportation for getting

19  home, Heather agreed; albeit very reluctantly.  She was still terrified over what just

20  happened and how she would explain it to her parents or anyone else.  On the drive

21  home, Dr. Atwood again began acting sexual by trying to touch her chest and crotch

22  area.  She kept pushing his hand away.  Eventually, he dropped her at her parents

23  house.  After she quickly exited from his car and went into her home, Dr. Atwood

24  telephoned her several times but she never answered his calls.

25         17.    The day following this incident, Heather came to work but felt extremely

26                        5

upset.  She left early and called in "sick" to work during the following days.  Feeling

extremely depressed and disgusted by what happened, her mood became sullen and

withdrawn.  Eventually, her step-mother (Veronica) engaged her in a conversation

during which Heather related what had happened.  Horrified over this incident, Veronica

became very upset.  Heather's father, who had trusted Dr. Atwood, became enraged

and wanted to go to his house to confront him based upon his treatment of his

daughter.  Because of their prior friendship with Dr. Atwood, Heather's parents felt very

guilty and betrayed.  They were apprehensive about how to confront Dr. Atwood

regarding the matter given his social standing and influence within their community.

Eventually, a few days later, Veronica confronted Dr. Atwood who responded by stating

that he had only been "joking around" with Heather.

18.    Terrified and emotionally distraught over what occurred and what might

occur if she were to continue working there, Heather decided she could not return to

Atwood Urgent.  Subsequently, Dr. Atwood sent Heather a text message in which he

stated:

> "I feel so bad.  I'm sorry!  You are a great employee
> and friend.  I'm sorry I pissed you off.  Please forgive me."

Since the incident that occurred in August 2011, Heather has battled severe

depression, as well as feelings of inadequacy, shame and humiliation.

.   .   .

.   .   .

.   .   .

.   .   .

.   .   .

.   .   .

6

## IV.

## FIRST CAUSE OF ACTION

### (Intentional Infliction Of Emotional Distress)

19.     Plaintiff realleges and incorporates by reference the allegations found in paragraphs 5 through 18 set forth above.

20.     Defendant Dr. Atwood, the chief officer of Atwood Urgent, engaged in extreme and outrageous conduct with reckless disregard for whether it would cause Plaintiff emotional distress.  However, Plaintiff did in fact suffer extreme emotional distress as an actual or proximate result of Defendant's conduct, including, but not limited, to the incident in which he attempted to sexually force himself upon Plaintiff.

21.     Wherefore, Plaintiff demands judgment against all Defendants for damages in an amount to be adduced at trial by jury in this matter. Further, Plaintiff demands compensation for the costs of this action, including attorney's fees and such other relief deemed just and equitable.

## V.

## SECOND CAUSE OF ACTION

### (Battery)

22.     Plaintiff realleges and incorporates by reference the allegations found in paragraphs 5 through 18 set forth above.

23.     Dr. Atwood, the chief officer of Atwood Urgent, made an intentional, unlawful and harmful contact with Plaintiff when he attempted to sexually force himself upon Plaintiff in or around August 2011, as well as on other occasions when he would touch Plaintiff.

24.     Wherefore, Plaintiff demands judgment against all Defendants for damages in an amount to be adduced at trial by jury in this matter. Further, Plaintiff

7

1 | demands compensation for the costs of this action, including attorney's fees and such

2 | other relief deemed just and equitable.

3 | **VI.**

4 | **THIRD CAUSE OF ACTION**

5 | **(False Imprisonment)**

6 |       25.    Plaintiff realleges and incorporates by reference the allegations found in

7 | paragraphs 5 through 18 set forth above.

8 |       26.    Dr. Atwood, the chief officer of Atwood Urgent, engaged in acts intending

9 | to confine Plaintiff within boundaries fixed by him (his office couch) when he climbed on

10 | top of Plaintiff and held her down by the arms during the incident that occurred in

11 | August 2011.  His actions directly and/or indirectly resulted in Plaintiff's confinement.

12 | Plaintiff was conscious of the confinement (as evidenced by the fact that she struggled

13 | to escape him) and was harmed by it.

14 |       27.    Wherefore, Plaintiff demands judgment against all Defendants for

15 | damages in an amount to be adduced at trial by jury in this matter. Further, Plaintiff

16 | demands compensation for the costs of this action, including attorney's fees and such

17 | other relief deemed just and equitable.

18 | **VII.**

19 | **FOURTH CAUSE OF ACTION**

20 | **(Constructive Discharge)**

21 |       28.    Plaintiff realleges and incorporates by reference the allegations found in

22 | paragraphs 5 through 18 set forth above.

23 |       29.    Dr. Atwood and Atwood Urgent created working conditions so intolerable

24 | and aggravated that a reasonable person in Plaintiff's position would feel compelled to

25 | resign.  In this case, Plaintiff did in fact resign based on the non-stop sexual

26 | 8

1   harassment which culminated in the August 2011 incident.  Dr. Atwood, as owner of

2   Atwood Urgent and as Plaintiff's direct supervisor, had actual and/or constructive

3   knowledge of the intolerable actions and conditions and their impact on Plaintiff.  Dr.

4   Atwood could have remedied the situation (by controlling his behavior) but failed to do

5   so.

6         30.      Wherefore, Plaintiff demands judgment against all Defendants for

7   damages in an amount to be adduced at trial by jury in this matter. Further, Plaintiff

8   demands compensation for the costs of this action, including attorney's fees and such

9   other relief deemed just and equitable.

10  .   .   .

11  .   .   .

12  .   .   .

13  .   .   .

14  .   .   .

15  .   .   .

16  .   .   .

17  .   .   .

18  .   .   .

19  .   .   .

20  .   .   .

21  .   .   .

22  .   .   .

23  .   .   .

24  .   .   .

25  .   .   .

26                           9

## VIII.

### **RELIEF REQUESTED**

31.    Wherefore, in light of the foregoing, Plaintiff requests that the Court enter the following relief in this matter:

a.    Set this matter for <u>trial by jury</u> on a date certain;

b.    Enter declaratory judgment in favor of Plaintiff on the basis that Defendants' conduct violated her common law rights;

c.    Award Plaintiff general and compensatory damages in an amount <u>exceeding</u> $250,000;

d.    Award Plaintiff exemplary, special and punitive damages against Defendants in order to deter future conduct;

e.    Pre-judgment and post-judgment interest, as provided by law;

f.    Award Plaintiff his costs and reasonable attorneys fee;

g.    Award all other just and proper relief.

Respectfully submitted,

/s/ *Ruth L. Cohen*
/s/ *Paul S. Padda*

Ruth L. Cohen, Esq.
Paul S. Padda, Esq.
COHEN & PADDA, LLP
4240 West Flamingo Road, #220
Las Vegas, Nevada 89103
Tele: (702) 366-1888
Fax: (702) 366-1940
Web: caplawyers.com

Attorneys for the Plaintiff

Dated: July 10, 2012

10

EXHIBIT D

**HOWARD & HOWARD ATTORNEYS PLLC**
Robert L. Rosenthal, Esq.
State Bar No. 6476
Jason P. Weiland, Esq.
State Bar No. 12127
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
Telephone: (702) 257-1483
Facsimile: (702) 567-1568
E-Mail Address: rlr@h2law.com
            jw@h2law.com
*Attorneys for Defendants, Counterclaimant*
*and Third Party Plaintiff*

## UNITED STATES DISTRICT COURT FOR

## THE DISTRICT OF NEVADA

| | |
|---|---|
| HEATHER PAINTER<br><br>          Plaintiff,<br><br>   vs.<br><br>AARON ATWOOD, D.D.S.; and ATWOOD URGENT DENTAL CARE, PLLC<br><br>          Defendants. | Case No.:  2:12-cv-1215-JCM-(NJK)<br>Dept. No:  XXIX<br><br>**DEFENDANT ATWOOD URGENT DENTAL CARE, PLLC'S FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFF** |

TO:    HEATHER PAINTER.; and

TO:    PAUL S. PADDA, her attorney.

       Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Atwood Urgent Dental Care, PLLC, by and through its attorneys of record, the law firm of Howard & Howard Attorneys PLLC, requests that Plaintiff answer the following Requests for Production within thirty (30) days of the date hereof. These Requests shall be deemed continuing so as to require further and supplemental production should the requested party obtain any additional documents which are responsive to these Requests subsequent to the time of initial production and inspection.

2278746

1

# GENERAL DEFINITIONS

1. As used herein, the terms "YOU" and "YOUR" shall be deemed to refer to yourself, Heather Painter, and any agent, servant, employee, attorney representative or other person acting or purporting to act on behalf of Heather Painter.

2. "PERSON" means natural persons, trusts, estates, proprietorships, associations, governmental bodies, corporations, partnerships, limited partnerships, investment trusts, joint ventures, or any other form of organization or legal entity, and shall include any member, division, sub-division, affiliate, subsidiary, parent, partner, officer, director, employee and agent of the legal entity.

3. "DOCUMENT" means any kind of printed, typed, recorded, written, graphic, or photographic matter (including audio and/or video tape recordings), however printed, produced, reproduced, coded or stored, of any kind or description, whether sent or received or not, including originals, copies, non-identical copies, reproductions, facsimiles, drafts, and both sides thereof, and including, without limitation, handwritten and/or typed notes; letters and all other correspondence; records; papers; books; accounts; invoices; canceled checks; expense reimbursement forms; orders; order forms; resumes; job applications and any related employment forms; photographs; drawings; sketches; telegrams; cables; telex; faxes; messages; memoranda; notations; work papers; routing slips; transcripts; recordings or minutes of telephone or other conversations, or of interviews, or of conferences, or of meetings; affidavits; summaries; opinions; court pleadings; desk calendars; personal or pocket calendars and/or planners; appointment books; diaries; telephone logs; lists; tabulations; graphs; charts; tables; maps; surveys; data sheets; computer tapes and disks; computer printouts; computer files and programs; microfilm; microfiche; all other records kept by electronic, photographic or

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
(702) 257-1483

2278746

2

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
(702) 257-1483

mechanical means; and other things similar to the foregoing, regardless of their author or origin, of any kind, however denominated by the Defendant, wherever they may be kept, including, but not limited to, residences, offices and storage facilities.

4. "ANY" means "each and every" as well as "any one."

5. "And" and "or" shall be construed conjunctively or disjunctively, as necessary to make the request inclusive rather than exclusive.

6. The singular includes the plural and vice versa.

7. "RELATING TO" means and includes concerning, discussing, analyzing, alluding to, consisting of, referring to, embodying, reflecting, mentioning, summarizing, describing, regarding, about, recording, in respect of, connected with, containing, showing, responding to, commenting on, constituting or mentioning.

8. "COMMUNICATION" means any contact between two or more persons, including any of the members, agents, employees, or representatives thereof, and shall include, without limitation, written contact by such means as letters, memoranda, telegrams, faxes, telex, or any other documents, and oral contact by such means as face-to-face meetings and telephone conversations.

9. "IDENTIFY" or "IDENTITY" means: (a) with respect to a natural person, state the person's full name, present or last known residence address (including street name and number, city or town, state, zip code, and telephone number), business affiliation or employer, title or position during the relevant time period and presently, and present or past relationship, if any, to any party to this litigation or labor union; (b) with respect to any entity other than a natural person, state its full name and type of entity (e.g., corporation, partnership, government agency, etc.), the address of its principal place of business (including street name and number,

city or town, state, zip code, and telephone number), the nature of its business, and present or past relationship, if any, to any party to this litigation or labor union; and (c) with respect to a document, describe the document in sufficient detail to serve as the basis for a request for production as documents under F.R.C.P. 34, or a subpoena duces tecum. This description should include the nature of the document, the person or persons who prepared it and the date it was prepared, and the identity of the person or persons who have possession of it.

10. "HEALTH CARE PROVIDER" means a physician, surgeon, orthopedist, cardiac specialist, neurologist, osteopath, chiropractor, physiotherapist, occupational therapist, psychiatrist, psychologist, or any other type of medical practitioner or any person who practices the healing or curing arts, including family or personal physicians.

11. The term "WITNESS" means the name, and telephone number of each person having knowledge of or pertaining to the item in question.

## INSTRUCTIONS

1. Please produce the original and each non-identical copy of each document or other tangible thing requested herein which is in your possession, custody or control, or that of any your agents, attorneys, accountants, employees, or representatives. If the original is not in your possession, custody or control, or that of your agents, attorneys, accountants, employees, or representatives, full, clear, legible copy thereof is to be produced.

2. Documents shall be produced either in such a manner as to indicate the particular request or requests to which they are responsive or in the manner in which they are kept in the usual course of business, and tabs, post-its, labels, or other documents of similar kind shall be produced therewith; in either event, file folders or other materials holding responsive documents must be produced.

2278746

4

3.      Whenever a Request is answered in whole or in part by referring to a previous production, you should state:

      a.      the date the document was produced;

      b.      the title of the responsive pleading in which it was produced; and

      c.      the bates-stamp number(s) of each such document.

4.      If you claim that the attorney-client privilege or any other privilege is applicable to any document sought by these document requests, you shall:

      a.      describe generally the subject matter of the document;

      b.      identify each person who has ever had possession, custody or control of the document or any copy thereof;

      c.      identify the privilege asserted (i.e., attorney-client privilege);

      d.      provide sufficient further information concerning the document and the circumstances of its preparation and dissemination to explain the claim of privilege and to allow a court to adjudicate the propriety of such claim.

5.      Pursuant to F.R.C.P. 26, these document requests shall be deemed continuous up to and following the date of your responses, such that any document requested herein which is either discovered by you or becomes known by you subsequent to your initial responses but prior to the final conclusion of this case should be immediately made known to Defendants in a supplemental production of documents.

6.      These document requests are propounded without prejudice to or waiver of Defendants' right to conduct further discovery on these issues, or on any other issues.

7.      You are requested to provide all documents within your possession, custody or control. In the event that you provide only a portion of the documents called for by any

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
(702) 257-1483

2278746

particular document request, please state the reason(s) for your inability to provide the remainder of the documents requested and the identity of the document(s).

8.    In the event the documents called for by any particular document request are no longer in your possession, custody or control, please state the reason(s) why those documents are no longer in your possession, custody or control and the identity of the person or entity that has possession, custody or control of the document(s).

9.    In the event that documents called for by any particular document request have been lost or destroyed, please state the date on which the document(s) were lost or destroyed, the manner in which the document(s) were lost or destroyed, the identity of the document(s), and the identity of any person(s) who has knowledge of the contents of the document(s) or has received a copy of such document(s).

## DOCUMENTS TO BE PRODUCED

### REQUEST NO. 1:

Produce all text messages that YOU have sent or received RELATED TO the allegations contained within YOUR Complaint.

### REQUEST NO. 2:

Produce all text messages that YOU have sent or received RELATED TO YOUR employment with Atwood Urgent Dental Care, PLLC from July 1, 2010 to the present.

### REQUEST NO. 3:

Produce all text messages that YOU have sent or received RELATED TO Dr. Aaron Atwood from July 1, 2010 to the present.

/ / / /

/ / / /

2278746

**REQUEST NO. 4:**

Produce all text messages that YOU have sent or received RELATED TO Kelli Atwood from July 1, 2010 to the present.

**REQUEST NO. 5:**

Produce ANY posts and/or messages that YOU have made on social media websites, including but not limited to, Facebook, Myspace, and Twitter, from July 1, 2010 to the present, RELATED TO YOUR employment with Atwood Urgent Dental Care, PLLC.

**REQUEST NO. 6:**

Produce ANY posts and/or messages that YOU have made on social media websites, including but not limited to, Facebook, Myspace, and Twitter, from July 1, 2010 to the present, RELATED TO Dr. Aaron Atwood.

**REQUEST NO. 7:**

Produce ANY posts and/or messages that YOU have made on social media websites, including but not limited to, Facebook, Myspace, and Twitter, from July 1, 2010 to the present, RELATED TO Kelli Atwood.

**REQUEST NO. 8:**

Produce all DOCUMENTS RELATED TO ANY of the allegations contained in YOUR Complaint.

**REQUEST NO. 9:**

Produce all DOCUMENTS RELATED TO ANY conduct of Dr. Aaron Atwood that was directed towards YOU that you believe was improper while YOU were employed with Atwood Urgent Dental Care, PLLC.

/ / / /

2278746

7

**REQUEST NO. 10:**

Produce all DOCUMENTS RELATED TO ANY conduct of Dr. Aaron Atwood that YOU witnessed while YOU were employed with Atwood Urgent Dental Care, PLLC that YOU believe was improper.

**REQUEST NO. 11:**

Produce all DOCUMENTS RELATED TO the allegations in YOUR Complaint that "Plaintiff did in fact suffer extreme emotional distress as an actual or proximate result of Defendant's conduct, including, but not limited, to the incident in which he attempted to sexually force himself upon Plaintiff." (*See* Complaint at ¶ 20).

**REQUEST NO. 12:**

Produce all DOCUMENTS RELATED TO the allegations in YOUR Complaint that "[s]ince the incident that occurred in August 2011, Heather has battled severe depression, as well as feelings of inadequacy, shame and humiliation." (*See* Complaint at ¶ 18).

**REQUEST NO. 13:**

Produce all medical records for all HEALTH CARE PROVIDERS from which YOU have sought treatment from July 1, 2008 to the present.

**REQUEST NO. 14:**

Produce copies of all prescription medications which have been prescribed for YOU from July 1, 2008 to the present.

**REQUEST NO. 15:**

Produce all DOCUMENTS RELATED TO employment that YOU have applied for since YOU stopped working at Atwood Urgent Dental Care, PLLC.

/ / / /

2278746

**REQUEST NO. 16:**

Produce copies of YOUR telephone records for all telephone providers, whether landline, cellular phone or otherwise, that YOU have had from July 1, 2010 to the present.

**REQUEST NO. 17:**

Produce all DOCUMENTS, including but not limited to, photographs, videos and pictures, of YOU with Dr. Aaron Atwood, Kelli Atwood or their children from July 1, 2010 to the present.

**REQUEST NO. 18:**

Produce all DOCUMENTS supporting YOUR computation of damages contained in Plaintiff's Initial Disclosures.

**REQUEST NO. 19:**

Produce an executed copy of the attached Authorization for Use and Disclosure of Protected Health Information.

**REQUEST NO. 20:**

Produce all DOCUMENTS RELATED TO payments YOU have made toward satisfaction of the Promissory Note entered into between YOU and Dr. Aaron and Kelli Atwood. (*See* DEF00001-DEF00003).

DATED this __8__ day of May, 2013.

HOWARD & HOWARD ATTORNEYS PLLC

By: _____

Robert Rosenthal, Esq.
Jason P. Weiland, Esq.
3800 Howard Hughes Pkwy, Ste. 1000
Las Vegas, Nevada 89169
*Attorneys for Defendants, Counterclaimant and Third-Party Plaintiff*

2278746

9

Howard & Howard Attorneys PLLC
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
(702) 257-1483

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of May 2013, I deposited in the Post Office at Las Vegas, Nevada, a true and correct copy of DEFENDANT ATWOOD URGENT DENTAL CARE, PLLC'S FIRST SET OF INTERROGATORIES TO PLAINTIFF enclosed in a sealed envelope upon which appropriate postage was fully prepaid and addressed as follows:

> Ruth L. Cohen, Esq.
> Paul S. Padda, Esq.
> COHEN & PADDA, LLP
> 4240 W. Flamingo Rd., Suite 220
> Las Vegas, Nevada  89103

and that there is regular communication by mail between the place of mailing and the places so addressed.

Barbara J Dunn
An employee of Howard & Howard Attorneys PLLC

2278746

10

# AUTHORIZATION FOR USE AND DISCLOSURE
## OF PROTECTED HEALTH INFORMATION

**Patient Identification**

Name:  Heather Painter

SSN:_____

**Information To Be Released:**   Complete health records, including but not limited to, records, reports, files, x-rays, billing, memoranda or notes, including abstracts or excerpts thereof, and any other information acquired while attending to patient with regard to health, psychiatric, mental illness, and all other health related matters in a professional capacity or otherwise.

**Purpose of Request:**  At the request of the patient

**Information to be disclosed by:**

**Information is to be received by:**

Howard & Howard Attorneys PLLC

3800 Howard Hughes Parkway, Ste. 1000

Las Vegas, Nevada 89169

702-257-1483

I understand this authorization permits the use or disclosure of the above health information, to be disclosed by the above named person or entity and received by Howard & Howard Attorneys PLLC and said authorization will expire upon the completion of this litigation.

I understand that I do not have to sign this authorization in order to receive treatment from the above named disclosing party.  You have the right to refuse to sign this authorization.  I understand that I have the right to revoke this authorization in writing, except to the extent that the persons or entity disclosing the information has already acted on this authorization.  Your written revocation must be submitted to the privacy officer of the disclosing entity at the address listed above.

I understand that the information disclosed by this authorization may be subject to re-disclosure by the recipient and no longer be protected by the HIPAA Privacy Rule.  I authorize the above named disclosing party to disclose the protected health information specified above.

Signature:_____          Date:_____

SUBSCRIBED AND SWORN to before me this _____ day of _____, 2013 in _____ County, State of _____.

_____
NOTARY PUBLIC

2278822

EXHIBIT E

# UNITED STATES DISTRICT COURT
### for the
### DISTRICT OF NEVADA

| | | |
|---|---|---|
| HEATHER PAINTER | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   2:12-CV-1215 JCM (NJK) |
| AARON ATWOOD, D.D.S.; and ATWOOD URGENT | ) | |
| DENTAL CARE, PLLC | ) | *(If the action is pending in another district, state where:* |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION
## OR TO PRODUCE DOCUMENTS IN A CIVIL ACTION

To:  Cristina Rivadeneira
c/o Cohen & Padda, LLP

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Howard & Howard Attorneys PLLC<br>3800 Howard Hughes Parkway, Suite 1000<br>Las Vegas, Nevada 89169 | Date and Time:<br><br>07/12/2013 09:00 |
|---|---|

The deposition will be recorded by this method:   Stenographic and Videotape

☒ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See Exhibit A

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   06/19/2013

*CLERK OF COURT*

OR

_____          _____
  *Signature of Clerk or Deputy Clerk*                  *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*  _____
Aaron Atwood, D.D.S.; and Atwood Urgent Dental Care, PLLC          , who issues or requests this subpoena, are:
Howard & Howard Attorneys PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169  702-257-1483

Civil Action No. 2:12-CV-1215 JCM (NJK)

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

    ☐ I personally served the subpoena on the individual at *(place)* _____

_____ on *(date)* _____ ; or

    ☐ I left the subpoena at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

    ☐ I served the subpoena on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

    ☐ I returned the subpoena unexecuted because _____ ; or

    ☐ Other *(specify):*


Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00 .


I declare under penalty of perjury that this information is true.


Date: _____        _____

                                           *Server's signature*

                   _____

                                         *Printed name and title*

                   _____

                                         *Server's address*


Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

Civil Action No. 2:12-CV-1215 JCM (NJK)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)*  CRISTINA RIVADENEIRA c/o COHEN & PADDA, LLP

was received by me on *(date)*  06/20/2013  .

☑ I served the subpoena by delivering a copy to the named individual as follows:  By leaving with LINDA

LOUIS at 4240 W. FLAMINGO RD. #220, LAS VEGAS, NEVADA

_____ at 10:41 A.M.  on *(date)*  06/20/2013  ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$  0.00  .

My fees are $ _____ for travel and $  75.00  for services, for a total of $  75.00  .

I declare under penalty of perjury that this information is true.

Date:  06/21/2013

_____
*Server's signature*

JOHN ELY, NV 662, PROCESS SERVER
*Printed name and title*

SOUTHERN NEVADA PROCESS SERVICE
1452 W. HORIZON RIDGE PKWY. #658
HENDERSON, NV

_____
*Server's address*

Additional information regarding attempted service, etc:

54583

## Exhibit A

Cristina Rivadeneira must bring to the deposition the following documents:

1. Produce copies of all text messages that you have sent or received related to Dr. Aaron Atwood from March 1, 2009 to the present;

2. Produce copies of all text messages that you have sent or received related to Kelli Atwood from March 1, 2009 to the present;

3. Produce copies of all text messages that you have sent or received related to your employment with Atwood Urgent Dental Care, PLLC;

4. Produce copies of all posts and/or messages that you have made on social media websites, including but not limited to, Facebook, Myspace, and Twitter, from March 1, 2009 to the present, related to your employment with Atwood Urgent Dental Care, PLLC;

5. Produce copies of all posts and/or messages that you have made on social media websites, including but not limited to, Facebook, Myspace, and Twitter, from March 1, 2009 to the present, related to Dr. Aaron Atwood;

6. Produce copies of all posts and/or messages that you have made on social media websites, including but not limited to, Facebook, Myspace, and Twitter, from March 1, 2009 to the present, related to Kelli Atwood;

7. Produce copies of all writings of any kind, whether in draft or final, whether in writing or in electronic form, including but not limited to, letters, notes, and emails, that you have sent or received related to your employment with Atwood Urgent Dental Care, PLLC;

8. Produce copies of all writings of any kind, whether in draft or final, whether in writing or in electronic form, including but not limited to, letters, notes, and emails, that you have sent or received related to Dr. Aaron Atwood from March 1, 2009 to the present;

9. Produce copies of all writings of any kind, whether in draft or final, whether in writing or in electronic form, including but not limited to, letters, notes, and emails, that you have sent or received related to Kelli Atwood from March 1, 2009 to the present; and

10. Produce all documents related to conduct of Dr. Aaron Atwood that you witnessed while you were employed with Atwood Urgent Dental Care, PLLC that you believe was improper.

EXHIBIT F

# UNITED STATES DISTRICT COURT
### for the
### DISTRICT OF NEVADA

| | | |
|---|---|---|
| HEATHER PAINTER | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   2:12-CV-1215 JCM (NJK) |
| AARON ATWOOD, D.D.S.; and ATWOOD URGENT | ) | |
| DENTAL CARE, PLLC | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION
## OR TO PRODUCE DOCUMENTS IN A CIVIL ACTION

To:  Veronica Painter
    c/o Cohen & Padda, LLP

  ☒ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Howard & Howard Attorneys PLLC | Date and Time: |
|---|---|
| 3800 Howard Hughes Parkway, Suite 1000<br>Las Vegas, Nevada 89169 | 07/11/2013 09:00 |

    The deposition will be recorded by this method:  _Stenographic and Videotape_

  ☒ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See Exhibit A

    The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  _06/19/2013_

            *CLERK OF COURT*

                                             OR

             *Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____
    _Aaron Atwood, D.D.S.; and Atwood Urgent Dental Care, PLLC_ , who issues or requests this subpoena, are:
Howard & Howard Attorneys PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169  702-257-1483

Civil Action No.  2:12-CV-1215 JCM (NJK)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the subpoena on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the subpoena at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the subpoena on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because _____ ; or

☐ Other *(specify):*



Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .



I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                        *Server's signature*

                                                  _____
                                                        *Printed name and title*


                                                  _____
                                                        *Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

Civil Action No. 2:12-CV-1215 JCM (NJK)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)*   VERONICA PAINTER c/o COHEN & PADDA, LLP

was received by me on *(date)*   06/20/2013   .

☑ I served the subpoena by delivering a copy to the named individual as follows: By leaving with LINDA

LOUIS at 4240 W. FLAMINGO RD. #220, LAS VEGAS, NEVADA

at 10:41 A.M.   on *(date)*   06/20/2013   ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$   0.00   .

My fees are $ _____   for travel and $   30.00   for services, for a total of $   30.00   .

I declare under penalty of perjury that this information is true.

Date:   06/21/2013

*Server's signature*

JOHN ELY, NV 662, PROCESS SERVER
*Printed name and title*
SOUTHERN NEVADA PROCESS SERVICE
1452 W. HORIZON RIDGE PKWY. #658
HENDERSON, NV

*Server's address*

Additional information regarding attempted service, etc:

54584

## Exhibit A

VERONICA PAINTER must bring to the deposition the following documents:

1.  Produce copies of all text messages that you have sent or received related to Dr. Aaron Atwood from July 1, 2010 to the present;

2.  Produce copies of all text messages that you have sent or received related to Kelli Atwood from July 1, 2010 to the present;

3.  Produce copies of all text messages that you have sent or received related to your employment with Atwood Urgent Dental Care, PLLC;

4.  Produce copies of all posts and/or messages that you have made on social media websites, including but not limited to, Facebook, Myspace, and Twitter, from July 1, 2010 to the present, related to your employment with Atwood Urgent Dental Care, PLLC;

5.  Produce copies of all posts and/or messages that you have made on social media websites, including but not limited to, Facebook, Myspace, and Twitter, from July 1, 2010 to the present, related to Dr. Aaron Atwood;

6.  Produce copies of all posts and/or messages that you have made on social media websites, including but not limited to, Facebook, Myspace, and Twitter, from July 1, 2010 to the present, related to Kelli Atwood;

7.  Produce copies of all writings of any kind, whether in draft or final, whether in writing or in electronic form, including but not limited to, letters, notes, and emails, that you have sent or received related to your employment with Atwood Urgent Dental Care, PLLC;

8.  Produce copies of all writings of any kind, whether in draft or final, whether in writing or in electronic form, including but not limited to, letters, notes, and emails, that you have sent or received related to Dr. Aaron Atwood from July 1, 2010 to the present;

9.  Produce copies of all writings of any kind, whether in draft or final, whether in writing or in electronic form, including but not limited to, letters, notes, and emails, that you have sent or received related to Kelli Atwood from July 1, 2010 to the present; and

10. Produce all documents related to conduct of Dr. Aaron Atwood that you witnessed while you were employed with Atwood Urgent Dental Care, PLLC that you believe was improper.

EXHIBIT G

1           UNITED STATES DISTRICT COURT

2              DISTRICT OF NEVADA

3

4   HEATHER PAINTER,          )

                       )

5         Plaintiff,     )

                       )

6   vs.                ) Case No.

                       ) 2:12-cv-01215-JCM-RJJ

7   AARON ATWOOD, D.D.S.;    )

   and ATWOOD URGENT DENTAL   )

8   CARE, PLLC,           )

                       )

9        Defendants.    )

10  _____

11

12

13

14     VIDEOTAPE DEPOSITION OF CRISTINA RIVADENEIRA

15             Las Vegas, Nevada

16        Wednesday, October 23, 2013

17               Volume 1

18

19

20

21

22  Reported by:

    CHRISTY I. PHELPS

23  CCR No. 683

24  Job No. 1751852

25  PAGES 1 - 108

Page 1

```
1        Q.   Did you bring them here today?

2        A.   No.

3        Q.   Why not?

4        A.   Because I didn't believe it was necessary.

5        Q.   You received a copy of this deposition subpoena,

6    right?

7        A.   Yes.

8        Q.   And Exhibit A attached to the deposition subpoena

9    ordered you to bring documents, any documents in

10   response to Numbers 1 through 10.  Is it your testimony

11   that you didn't believe that bringing any documents that

12   you may have in response to Numbers 1 through 10 wasn't

13   required?

14       A.   Well, yesterday when I called the attorney's

15   assistant, they told me not to worry about that.  I was

16   told not to worry about that.

17       Q.   I want you to take a look at Number 2 on Exhibit

18   A.  It states:  "Produce copies of all text messages

19   that you have sent or received related to Kelli Atwood

20   from March 1, 2009 to the present."

21            Do you see that?

22       A.   Yes.

23       Q.   Did you ever send or receive text messages to

24   anybody or from anybody regarding Kelli Atwood from

25   March 1, 2009 to the present?
```

| | | |
|---|---|---|
| 1 | custody or control? | 09:14:36 |
| 2 | A Yes, this is all that I have. | 09:14:37 |
| 3 | Q Did you withhold any documents for any reason or | 09:14:52 |
| 4 | were any held back from us? | 09:14:56 |
| 5 | A No. | 09:14:59 |
| 6 | Q I'd like you to go through what's been marked as | 09:15:09 |
| 7 | Defense Exhibit C and make sure that everything | 09:15:12 |
| 8 | contained in Exhibit C is what you gave to your | 09:15:14 |
| 9 | attorney. | 09:15:20 |
| 10 | A Yeah. | 09:15:34 |
| 11 | Q Does the contents of Defense Exhibit C appear to | 09:15:34 |
| 12 | be text messages between you Dr. Atwood? | 09:15:42 |
| 13 | A Yes. | 09:15:51 |
| 14 | Q You previously testified that you sent and/or | 09:15:51 |
| 15 | received text massages to or from other people besides | 09:15:57 |
| 16 | Dr. Atwood regarding Dr. Atwood and Urgent Dental. Do | 09:16:03 |
| 17 | you recall testifying to that? | 09:16:12 |
| 18 | A Yes. | 09:16:27 |
| 19 | Q Specifically, you testified that you sent or | 09:16:27 |
| 20 | received text messages from or to Edna, Nadia, Heather, | 09:16:31 |
| 21 | Veronica, Ellie, Thelma, Julie, Fernanda and Tracy and | 09:16:40 |
| 22 | Santiago. | 09:16:50 |
| 23 | Why were none of those text messages produced? | 09:16:51 |
| 24 | A I no longer have the text messages from the | 09:16:57 |
| 25 | people that you just mentioned. | 09:17:11 |

Page 118

| 1 | Q   You no longer have text messages that you sent to | 09:17:12 |
| 2 | any of those people? | 09:17:17 |
| 3 | A   From some of those individuals I no longer have | 09:17:25 |
| 4 | them because I changed my phone number or I changed the | 09:17:29 |
| 5 | telephone.  I changed my telephone. | 09:17:33 |
| 6 | Q   From some of those people, but does that mean | 09:17:36 |
| 7 | that you still have text messages that you sent to or | 09:17:40 |
| 8 | received from some of those other people? | 09:17:42 |
| 9 | A   Yes, but these are text messages from now, not | 09:17:45 |
| 10 | from the time when I worked there. | 09:18:05 |
| 11 | Q   So is it your testimony that you don't have any | 09:18:06 |
| 12 | text messages that you either sent to or received from | 09:18:09 |
| 13 | Edna, Nadia, Heather, Veronica, Ellie, Thelma, Julie, | 09:18:14 |
| 14 | Fernanda or Tracy regarding Dr. Atwood and/or Urgent | 09:18:21 |
| 15 | Dental? | 09:18:34 |
| 16 | A   No, I don't have them.  And besides that, when I | 09:18:34 |
| 17 | spoke to the secretary of the law firm, she told me that | 09:19:00 |
| 18 | I only needed to present the text messages that had to | 09:19:05 |
| 19 | do with Kelli Atwood and Aaron Atwood. | 09:19:12 |
| 20 | Q   And Urgent Dental? | 09:19:16 |
| 21 | A   Yeah. | 09:19:19 |
| 22 | Q   I just want to make sure we're 100 percent, that | 09:19:20 |
| 23 | I understand your testimony correctly. | 09:19:29 |
| 24 | You don't have any text messages to or from any | 09:19:34 |
| 25 | of those people you just mentioned, including Santiago, | 09:19:38 |

Page 119

|    |                                                              |          |
|----|--------------------------------------------------------------|----------|
| 1  | Atwood or Urgent Dental, from March 1, 2009 to the           | 09:28:41 |
| 2  | present; is that correct?                                     | 09:28:46 |
| 3  |    A   Yes.                     | 09:28:46 |
| 4  |    Q   You did not look for text messages to or from | 09:28:51 |
| 5  | anybody else, other than those people we have already         | 09:28:54 |
| 6  | discussed, regarding Kelli Atwood, Dr. Aaron Atwood or        | 09:28:57 |
| 7  | Urgent Dental from March 1, 2009 to the present; isn't        | 09:29:02 |
| 8  | that right?                                                   | 09:29:09 |
| 9  |    A   Yes, but most of the text messages from -- the | 09:29:09 |
| 10 | text messages from most of the people that you have          | 09:29:19 |
| 11 | mentioned to me I no longer have those text messages on       | 09:29:22 |
| 12 | my phone.                                                     | 09:29:25 |
| 13 |    Q   I understand that.  If you have those on your | 09:29:26 |
| 14 | computer, or your phone, or any other location, you need      | 09:29:29 |
| 15 | to produce those documents.                                  | 09:29:34 |
| 16 |       Again, I'm not interested in text messages that | 09:29:36 |
| 17 | you might have sent to any of those people or anybody         | 09:29:39 |
| 18 | else that don't concern Kelli Atwood, Aaron Atwood or        | 09:29:43 |
| 19 | Urgent Dental.                                                | 09:29:51 |
| 20 |    A   Okay.  That's why I'm telling you that the only | 09:29:55 |
| 21 | ones that I saved and I have are from Dr. Atwood because      | 09:30:03 |
| 22 | he was my boss and I needed to save them.  From the          | 09:30:07 |
| 23 | other people, no.                                            | 09:30:11 |
| 24 |    Q   But you haven't looked for text messages to or | 09:30:13 |
| 25 | from the other people regarding Kelli Atwood, Dr. Atwood      | 09:30:17 |

Page 125

EXHIBIT H

**Weiland, Jason P.**

| | |
|---|---|
| **From:** | Weiland, Jason P. |
| **Sent:** | Tuesday, December 17, 2013 1:54 PM |
| **To:** | rcohen@caplawyers.com |
| **Cc:** | Rosenthal, Robert L. |
| **Subject:** | Atwood adv. Painter - Spoliation Motion |

Ruth,

Please let this correspondence memorialize our conversation this afternoon during which I informed you that the Defendants would be filing a Motion for Spoliation Sanctions. Based upon the documents produced and the deposition testimony of Heather Painter, Veronica Painter, and Cristina Rivadeneira, it is apparent that relevant evidence has been destroyed. Thanks.

Jason



**Howard & Howard**
law for business·
Jason P. Weiland
Attorney and Counselor

Direct: 702.667.4803     3800 Howard Hughes #1000
Fax     702.567.1568      Las Vegas, NV 89169
JWeiland@HowardandHoward.com

www.howardandhoward.com

**NOTICE:** Information contained in this transmission to the named addressee is proprietary information and is subject to attorney-client privilege and work product confidentiality. If the recipient of this transmission is not the named addressee, the recipient should immediately notify the sender and destroy the information transmitted without making any copy or distribution thereof.

**NOTICE:** To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (a) avoiding penalties under the Internal Revenue Code; or (b) promoting, marketing or recommending to another party any transaction or tax-related matter addressed herein.