UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| HEATHER PAINTER, | )<br>) |
| Plaintiff, | ) 2:12-cv-01215-JCM-RJJ<br>) |
| vs. | )<br>) |
| AARON ATWOOD, D.D.S, et al. | ) **O R D E R**<br>) |
| Defendants. | )<br>) |

Before the Court is Defendants' Motion for Sanctions for Destruction of Text Messages and Social media Posts, Docket No. 56. The Court has considered Defendants' Motion, Docket No. 56, Plaintiff's Response, Docket No. 68, and Defendants' Reply, Docket No. 61, as well as the arguments and representations made at the hearing on the matter.

**I.   BACKGROUND**

**A.   General and Procedural Background**

This case arises out of an incident which allegedly occurred on or about May 29, 2011. Docket No. 1. On that day, according to Plaintiff, her former employer, Defendant Aaron Atwood, D.D.S.,[1] climbed on top of her with his pants undone and held her down.[2] *Id*. at 5. Plaintiff asserts that she suffered extreme emotional distress due to these actions by her former employer and thus, on July 10, 2012, she filed the instant action. *Id*. Defendant Atwood disputes Plaintiff's recollection of events and, during his deposition, he stated that he was only attempting to tickle Plaintiff and that the sexual nature of their relationship was consensual. Docket No. 51 (*citing* Atwood Deposition,

---

[1]Plaintiff worked at Defendant Atwood's dental practice and also babysat his three children.

[2]Plaintiff also claims that, during her employment, Dr. Atwood repeatedly made sexual remarks and touched her inappropriately. *Id*.

b

at 51-52).

A few months following the alleged incident, in approximately June or July of 2011, Plaintiff and her step-mother, Veronica Painter, retained attorney Ruth Cohen from the law firm of Cohen & Padda. Docket No. 56 at 4. In August 2011, Plaintiff's attorney contacted Defendants, indicated that she was representing Plaintiff, and presented a demand. *Id*. Defendants, in turn, retained the law firm of Howard & Howard and their attorney, Robert Rosenthal, contacted Plaintiff's attorney. *Id*. According to Defendants, Mr. Rosenthal explained to Ms. Cohen that Plaintiff was precluded from bringing employment discrimination claims under Title VII because Urgent Dental did not have fifteen or more employees. *Id*. Thereafter, Defendants assert, they did not hear anything further from Plaintiff or her counsel until Plaintiff filed the complaint in this lawsuit on July 10, 2012, approximately eleven months later. *Id*.

On August 10, 2012, Defendants filed a motion to dismiss the Complaint. Docket No. 5. The Court denied the motion to dismiss on December 12, 2012. Docket No. 12. Thereafter, on January 23, 2013, Defendants filed their answer, which included a third party complaint and counterclaim against Plaintiff. Docket No. 14. On February 11, 2013, Plaintiff filed a motion to dismiss the counterclaims. Docket No. 16.

On March 5, 2013, the Court approved the parties' proposed discovery plan and scheduling order setting a discovery deadline of July 22, 2013.[3] Docket No. 23. On March 26, 2013, Defendants filed a motion to stay discovery pending a decision on Plaintiff's motion to dismiss. Docket No. 27. Two days later, the Court denied that request. Docket No. 28. Subsequently, on May 29, 2013, the Court denied Plaintiff's motion to dismiss. Docket No. 30. On June 19, 2013, Plaintiff filed an answer to the third party complaint. Docket No. 32. That same day, the parties requested an extension of the discovery deadline. Docket No. 33. The Court approved that request and the discovery deadline was moved to September 20, 2013. Docket No. 34.

---

[3]The parties submitted two proposed discovery plans and scheduling orders before the discovery plan that was eventually approved by the Court. Docket Nos. 15 and 18. The Court denied both previous discovery plans because they were filed after the presumptively reasonable 180 discovery period was over and did not comply with the Local Rules. Docket Nos. 17 and 19. The Court advised the parties that they cannot stay this case without Court approval. *Id*.

Thereafter, prior to filing the present motion, the parties had two disputes during the course of discovery. On July 26, 2013, Defendants filed a Motion to Compel seeking a Court order compelling Plaintiff to respond to its First Set of Interrogatories and its First Set of Requests for Production on Plaintiff. Docket No. 35. Defendants also asked the Court to award reasonable attorney's fees for telephone calls, emails, and having to bring the motion. *Id*. On August 8, 2013, the Court granted in part and denied in part Defendants' motion and ordered Plaintiff to provide verified responses to the First Set of Interrogatories.[4] Docket No. 39. Additionally, the Court ordered Defendants to resubmit their request for sanctions providing documentation for the actual hours worked. *Id*. Ultimately, the Court denied Defendants' request for fees due to Defendants' minimal meet and confer efforts concerning the motion to compel. Docket No. 48.

On August 29, 2013, the parties again requested to extend discovery deadlines. Docket No. 46. The Court granted that request and the discovery deadline was moved to December 12, 2013. Docket No. 47.

The second discovery dispute was filed on September 19, 2013. Docket No. 49. Defendants filed an Emergency Motion to Compel Plaintiff to Attend a FRCP 35 Evaluation with Lewis M. Etcoff, Ph.D., ABN. *Id*. Although Plaintiff agreed to submit to an Independent Medical Exam ("IME"), as well as the date for the exam selected by the parties, Plaintiff objected to the length of the evaluation and argued that a proper evaluation could be conducted in under 90 minutes. Docket No. 51 at 12. Defendants, on the other hand, argued that the IME would need to last approximately 6 hours. Docket No. 49. The Court ruled in favor of Defendants and found that 6 hours for examination was appropriate. Docket No. 53.

**B.    Background Related to Instant Motion**

Defendants' Motion for Spoliation Sanctions, filed after the close of discovery, is the third discovery-related dispute in this matter. Docket No. 56. Defendants assert that Plaintiff and her two

---

[4] Plaintiff's counsel produced the requested discovery prior to the Court issuing its Order and indicated that the reason for the delay was communication difficulties with Plaintiff, which she had remedied. Docket No. 37. However, Plaintiff failed to verify her responses to Defendants' interrogatories and thus, the Court ordered her to do so. Docket No. 39.

1 main witnesses, Veronica Painter ("Ms. Painter") and Cristina Rivadeniera ("Ms. Rivadeniera"),[5]
2 intentionally destroyed text messages and Facebook posts that contradict Plaintiff's claims and
3 deposition testimony. *Id*. Specifically, Defendants allege that while Plaintiff was employed at Urgent
4 Dental, she posted Facebook comments and pictures regarding Urgent Dental and the Atwoods,
5 including comments about how much she enjoyed her job, how Urgent Dental was a great place to
6 work, and how Dr. Atwood was a great boss and she enjoyed working with him. *Id*. at 6. Defendants
7 assert that they know these posts existed because Dr. Atwood's wife, Kelly Atwood, was friends
8 with Plaintiff on Facebook until the fall of 2011, when Plaintiff "un-friended" her. *Id*.

9       Concerning Facebook photographs, Plaintiff admitted that she posted to Facebook pictures
10 taken while on a cruise with Dr. Atwood and his family. *See* Docket No. 56 at 33 (excerpt from
11 Plaintiff's deposition). She testified, however, that she removed those photos sometime after she
12 retained counsel because she randomly deletes albums from Facebook "on a constant basis." *Id*.
13 Despite their deletion, Defendants produced copies of the Facebook photographs during Plaintiff's
14 deposition. *Id*.

15       In regard to the at-issue text messages, Plaintiff testified that she randomly deleted text
16 messages while she was employed at Urgent Dental. *Id*. at 32. Those text messages allegedly
17 included some texts to a person named Ryan in which Plaintiff complained about Dr. Atwood. *Id*.
18 Plaintiff stated that she tried to get those text messages from her carrier, but was unable to do so. *Id*.
19 Additionally, Plaintiff stated that she replaced her phone in October 2011. *Id*.

20       As for Plaintiff's two main witnesses, Ms. Painter and Ms. Rivadeniera, Defendants assert
21 that they, like Plaintiff, deprived Defendants of access to requested text messages and social medial
22 posts. *Id*. at 7. Specifically, Defendants allege that Ms. Painter and Ms. Rivadeniera did not produce
23 or did not adequately search for all relevant text messages. *Id*.

24       Based on these allegations, Defendants assert that spoliation sanctions are appropriate and
25 the Court should dismiss this case or, alternatively, issue an adverse inference instruction that the

---

[5]Plaintiff's counsel, Cohen & Padda, also represents Veronica Painter and Cristina Rivadeniera. Docket No. 61 at 5. Plaintiff's counsel represents that the representation of Ms. Painter and Ms. Rivadeniera is for reasons unrelated to the allegations in this litigation, which are unique to Plaintiff. *Id*.

1   destroyed evidence was detrimental to Plaintiff's claims. *Id*.

2   **II.     INITIAL MATTERS**

3         In both their briefing and at the hearing, Defendants repeatedly attempted to characterize this case as rite with discovery abuses; however, that is simply not the case. Plaintiff was late in responding to written discovery, but then fully cooperated after Defendants filed a motion to compel and fully explained her prior deficiency. Additionally, discovery was extended twice to ensure that the parties had a sufficient amount of time to complete discovery. As for the disagreement over the length of the medical exam, Plaintiff explained her position and filed appropriate points and authorities to justify her objection to a full-day exam. When the Court disagreed with Plaintiff and instructed her to submit to the full-day exam, she did just that. These two discovery disputes were minor and do not warrant characterizing this case as rite with discovery abuses.

12  **III.    DISCUSSION**

13        Spoliation of evidence is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *United States v. Kitsap Physicians Service*, 314 F.3d 995, 1001 (9th Cir. 2002). "[Parties] engage in spoliation of documents as a matter of law only if they had 'some notice that the documents were potentially relevant' to the litigation before they were destroyed." *Id*. Therefore, the duty to preserve begins when a party reasonably should have known that the evidence is relevant to anticipated litigation. *See In re Napster*, 462 F.Supp.2d 1060, 1067 (N.D.Cal. 2006). Moreover, a spoliation remedy requires some degree of culpability. *Id*. at 1078. Specifically, prior to imposing sanctions, the court must first make a finding of fault. *Holiday v. Am. Cas. Co. of Reading, PA*, 2013 WL 1955561 (D. Nev. May 10, 2013) (*citing Silvestri v. General Motors Corporation,* 271 F.3d 583, 590 (4th Cir. 2001)). Then, the court should fashion a remedy which serves "the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Id*. (*quoting West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.1999)).

26      **A.     Destruction of Evidence**

27        Here, Defendants assert that Plaintiff and one of her key witnesses each destroyed social media posts and text messages, and that her other key witness destroyed text messages. Defendants'

- 5 -

1 evidence that they have presented to the Court, however, only partially supports that assertion.
2 Therefore, the Court must determine what evidence, if any, may have been destroyed.

### 1. Plaintiff's Facebook Posts

First, in regard to Plaintiff's Facebook posts (not pictures), the only evidence that alleged comments existed is the declaration of Defendant Kelli Atwood, attached to the instant motion. Docket No. 56 at 21-22. Further, Mrs. Atwood's declaration, dated January 15, 2014, is the first indication that the alleged Facebook posts exist. Nowhere in the excerpts of Plaintiff's deposition attached to the motion by Defendants, is there any reference to the alleged Facebook posts. *Id*. at 29-35. Although Defendants did request that Plaintiff bring any relevant social media posts or text messages to her deposition, they do not cite to a single portion of the deposition in which they asked Plaintiff about Facebook posts. *Id*. Nonetheless, at the hearing, Plaintiff's counsel, Ruth Cohen, stated that Plaintiff does not contest the existence of such Facebook posts. Additionally, it is undisputed that Plaintiff was asked to produce such posts and failed to do so. Therefore, the Court concludes that these posts existed and, because they have not been produced, were destroyed.

### 2. Plaintiff's Facebook Pictures

Defendants assert that Plaintiff spoliated evidence by deleting certain pictures off of Facebook. However, it is clear from Plaintiff's deposition transcript that Defendants have copies of those pictures and used them in the deposition, marking them as "Exhibit C." *Id.* at 33. Further, at the hearing on this matter, Defendants' counsel agreed that they have copies of these pictures and, thus, the Facebook pictures were "not the best example" of spoliation.[6] Accordingly, although Plaintiff admitted to removing the pictures from her Facebook account, it does not appear that the pictures were destroyed because they are currently in Defendants' possession.

### 3. Plaintiff's Text Messages

Plaintiff has admitted to randomly deleting text messages while employed at Urgent Dental. Docket No. 56 at 32. Specifically, there appear to be some text messages between Plaintiff and a person named Ryan in which she complained about Dr. Atwood. *Id*. These text messages would be

---

[6]Defendants' counsel asserted, however, that because Plaintiff deleted pictures from Facebook, it showed that she deleted her comments from of Facebook as well.

relevant to the case and no longer exist. Thus, the Court can conclude that they have been destroyed.

### 4. Ms. Painter's Text Messages

Next, Defendants assert that Ms. Painter destroyed relevant text messages. However, in response to Defendants' request for production, Ms. Painter brought two text messages to her deposition. *Id*. at 40. Further, she testified that she did not believe that she sent or received any other text messages that related to Dr. Atwood from July 1, 2010 to the date of the deposition, October 22, 2013, other than the two she brought to her deposition. *Id*. at 41. Nevertheless, Defendants assert that Ms. Painter spoliated evidence because her phone broke in the summer of 2011[7] and she did not contact her carrier to try to recover additional text messages. *Id*. at 15-17. Further, at the hearing, Defendants asserted that Ms. Painter's earlier testimony stating that she thought the two text messages she produced were sufficient, was contradictory to her testimony that she did not have any other text messages that related to Dr. Atwood. The Court disagrees. Ms. Painter's deposition testimony is consistent in that in that she states that there are no other text messages which are responsive to Defendants' request.

All the same, during the hearing on this matter, Defendants repeatedly asserted that Ms. Painter's testimony "defies credibility" and that she must have had additional text messages. Ms. Painter's credibility, however, is an issue for the jury to decide and, further, calling her credibility into question, with no evidentiary basis, is not a sufficient justification for finding spoliation. Indeed, the Court has no information relating to Ms. Painter's propensity to send text messages. Based on the information before the Court, it is entirely possible that Ms. Painter produced the only two relevant text messages. Simply put, Defendants have not met their burden of showing that Ms. Painter sent or received any additional relevant text messages. Accordingly, the Court cannot conclude that additional relevant text messages existed, or that such text messages were destroyed.

. . .

. . .

---

[7] Defendants continuously suggested throughout their motion and the hearing that it was not a coincidence that Ms. Painter's phone broke in the summer of 2011. There is no evidence, however, that Ms. Painter intentionally broke her phone.

- 7 -

### 5. Ms. Rivadeniara's Text Messages

Finally, Defendants assert that Ms. Rivadeniera disregarded their request for social media posts and text messages and, further, admitted to destroying certain text messages. Indeed, Ms. Rivadeniera testified that she did not bring any social media posts to her deposition because Plaintiff's attorney's secretary told her not to worry about it. *Id*. at 80. Further, she testified that she received text messages from other people regarding Dr. Atwood, but that she did not produce those text messages because she changed her telephone. *Id*. at 82. She also testified that the only messages she saved were the ones from Dr. Atwood because he was her boss and, thus, she needed to save them. *Id*. at 83. Therefore, it appears that there were relevant text messages that were destroyed.

Accordingly, based on the information discussed above, it appears that the only information which has been destroyed are Plaintiff's Facebook comments and certain text messages sent and/or received by Plaintiff and Ms. Rivadeniera concerning Dr. Atwood and Urgent Dental.

### B.   Fault

The next step in the inquiry is whether there was some degree of culpability in the destruction of the above-mentioned Facebook comments. With respect to a party's duty to preserve material evidence, even if the party does not "own or control the evidence, [she] still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence." *Id*. at 591 *(citing Andersen v. Schwartz*, 687 N.Y. S.2d 232, 234–35 (N.Y.Sup .Ct. 1999)); *see also Wm. T. Thompson Co. v. General Nutrition Corp ., Inc*., 593 F.Supp. 1443, 1455 (C.D.Cal.1984) ("While a litigant is under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.").

### 1. Plaintiff's Facebook Comments

At the hearing on this matter, Plaintiff's counsel conceded that Plaintiff deleted Facebook comments, as described in Defendant Kelli Atwood's declaration, and that she deleted those comments after she retained counsel for this litigation. Plaintiff's counsel argued, however, that

1  those Facebook posts were not relevant because Plaintiff has already admitted to enjoying working
2  for Defendant Dr. Atwood and because her constructive discharge claim is based entirely on the
3  alleged May 2011 incident. Further, Plaintiff's counsel asserted that Plaintiff is a 22-year old girl
4  who would not have known better than to delete her Facebook comments.

5  Both of Plaintiff's arguments fail. First, Plaintiff's Facebook comments discussing her
6  opinion on working and interacting with Defendant Dr. Atwood are directly relevant to this
7  litigation. Plaintiff's entire lawsuit centers around her assertion that the work environment at
8  Defendant Dr. Atwood's dental practice was sexual in nature. Indeed, as Plaintiff's counsel discussed
9  extensively during the hearing, Plaintiff believes that Defendant Dr. Atwood is a "sexual predator"
10 who requires his employees to accept his sexual advances or be fired. Thus, there is no question that
11 Plaintiff's Facebook comments relating to Defendant Dr. Atwood are relevant.

12 Second, as the Court stated at the hearing, it is of no consequence that Plaintiff is young or
13 that she is female and, therefore, according to her counsel, would not have known better than to
14 delete her Facebook comments. Once Plaintiff retained counsel, her counsel should have informed
15 her of her duty to preserve evidence and, further, explained to Plaintiff the full extent of that
16 obligation.

17 Accordingly, based on Plaintiff's counsel's representations during the hearing and the totality
18 of the circumstances, the Court finds that Plaintiff knew or should have known that the at-issue
19 Facebook comments were relevant to Defendants' case at the time she deleted them and, therefore,
20 there was some degree of culpability in the destruction of the above-mentioned Facebook comments.

21         2.        <u>Plaintiff's Text Messages</u>

22 In regard to Plaintiff's text messages, the Court finds that Plaintiff was not on notice to
23 preserve the deleted texts at the time she deleted them.  She specifically stated during her deposition
24 that she did not delete any texts after she left Urgent Dental. Docket No. 56, at 32. Defendants
25 conceded this fact at the hearing, but asserted that the deleted texts were still relevant and therefore
26 should have been produced. The Court agrees that the texts were indeed likely relevant; however,
27 Plaintiff deleted her text messages before the incident in May 2011 and, therefore, before she was
28 preparing for a lawsuit (she resigned within a week of the alleged incident with Dr. Atwood and did

1  not contact an attorney until a month after she resigned). Therefore, Plaintiff deleted the text
2  messages before she had an obligation to preserve evidence. Additionally, she stated that she tried
3  to retrieve past texts from her carrier, but was unable to do so. *Id*. Therefore, Plaintiff's deletion of
4  text messages does not meet the culpability or notice requirement for spoliation sanctions.

5                      3.        Ms. Rivadierna's Text Messages

6  Concerning the text messages deleted by Ms. Rivadierna, neither Defendants nor Plaintiff
7  were able to state with any certainty when Ms. Rivadierna was put on notice about the instant
8  lawsuit. Additionally, there is no indication that Plaintiff was aware that Ms. Rivadierna had relevant
9  information and, thus, needed to preserve that information. Ms. Rivadierna testified that she changed
10 her phone and only saved text messages from Dr. Atwood because he was her boss. *Id*. at 82-83.
11 Therefore, Defendants have failed to meet their burden of showing that Ms. Rivadiena was on notice
12 that she needed to save certain text messages. Further, Defendants have not provided any evidence
13 indicating that Ms. Rivadierna should have been on notice that she needed to save certain text
14 messages. Accordingly, Defendants have not met their burden of showing the requisite culpability
15 or notice for spoliation.

16 **B.     Remedy**

17 The Court has broad discretion in determining a proper sanction for spoliation, including
18 outright dismissal of the lawsuit.[8] *See Chambers v. NASCO, Inc*., 501 U.S. 32, 45 (1991).
19 Additionally, "[a] federal trial court has the inherent discretionary power to make appropriate
20 evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC*
21 *Corp*., 6 F.3d 1318, 1329 (9th Cir. 1993). *See also Yeti By Molly Ltd v. Deckers Outdoor Corp*., 259
22 F.3d 1101, 1105 (9th Cir. 2001). This power includes the power to sanction a responsible party by
23 instructing the jury that it may infer that the spoiled or destroyed evidence would have been
24 unfavorable to the responsible party. *Id*.; *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991).

---

[8]There are two sources of authority under which the Court can sanction a party for spoliation of evidence: its inherent authority and Rule 37. *Leon v. IDX Systems Corp*., 464 F.3d 951, 958 (9th Cir. 2006). Regardless of whether it is under Rule 37 or its inherent authority, a federal court applies federal law when addressing issues of spoliation of evidence. *See Glover v. BIC Corp*., 6 F.3d 1318, 1329 (9th Cir.1993) (applying federal law when addressing spoliation in diversity litigation).

However, "prior to imposing sanctions or redressing conduct, it must be shown whether the missing evidence is critical to the case of the moving party." *Holiday v. Am. Cas. Co. of Reading, PA*, 2013 WL 1955561 (*citing May v. F/V LORENA MARIE*, 2011 WL 1875470 (D.Alaska May 16, 2011) (*citing Nichols v. State Farm Fare and Casualty Co.*, 6 P.3d 300, 304 (Alaska 2000)); *see also Ingham v. United States*, 167 F.3d 1240, 1246 (9th Cir.1999); *Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp.*, 982 F.2d 363, 371 (9th Cir. 1992)). The district court's exercise of this discretionary power is reviewed by the Ninth Circuit for abuse of discretion. *Unigard,* 982 F.2d at 367.

### 1. Dismissal Sanctions

Dismissal is an available sanction when "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings" because "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (*citing Anheuser–Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir.1995)). Before imposing the "harsh sanction" of dismissal, however, the Court must consider the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id*.

The Court is not required to make explicit findings regarding each of these factors, *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 603(9th Cir. 1988), but a finding of "willfulness, fault, or bad faith" is required for dismissal to be proper. *Anheuser–Busc*h, 69 F.3d at 348. Additionally, the district court must consider "less severe alternatives" than outright dismissal. *U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co., Inc.*, 857 F.2d 600, 604 (9th Cir. 1988).

Here, the Court finds that dismissal will be too harsh of a sanction and that less drastic sanctions are available. First, Plaintiff's spoliation has not significantly delayed this case. This case is still on track to go to trial and, other than the instant motion, the spoliation issue has in no way

1  impacted the Court's docket. Next, because other sanctions are available, Defendants will not be
2  prejudiced by the Court's decision to not dismiss this case. Finally, an adverse inference sanction,
3  which Defendants have requested in the alternative, is a less drastic sanction available under these
4  circumstances.

### 2. Adverse Inference

The Ninth Circuit has explained that the adverse inference sanction is based on evidentiary and policy rationales that seek to deter a party who has notice of an item's relevance to litigation from destroying it. *See Akiona v. United States*, 938 F.2d 158, 161 (9th Cir.1991). A finding of bad faith is not a prerequisite for an adverse inference. *See Glover*, 6 F.3d at 1329.

The party seeking an adverse inference instruction must establish: (1) that the spoliating party had an obligation to preserve the evidence; (2) that the evidence was destroyed or significantly altered with a culpable state of mind; and (3) that the evidence was relevant to the other party's claim in that a reasonable trier of fact could find that it would support that claim. *See LaJocies v. City of North Las Vegas*, 2011 WL 1630331 *1 (D. Nev.) (*citing In re Napster*, 462 F.Supp.2d at 1072).

When relevant evidence is lost accidentally or for an innocent reason, an adverse evidentiary inference from the loss may be rejected. *Med. Lab. Mgmt. Consultants*, 306 F.3d at 823–24 (9th Cir. 2002) (*citing Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1159 (1st Cir.1996)). For example, in *Med. Lab. Mgmt. Consultants*, the court concluded that, under the totality of the circumstances, an unfavorable inference was not warranted because a rational jury would not infer that Defendants' loss of pap-smear slides indicated that the slides threatened Defendants' legal position and needed to be covered up. *Med. Lab. Mgmt. Consultants*, 306 F.3d at 823–24 (9th Cir. 2002); *citing Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir.1995) (the district court did not abuse its discretion in refusing an unfavorable inference when the circumstances indicated that the evidence was not intentionally lost and the responsible party searched for it, but to no avail); *Latimore v. Citibank Fed. Sav. Bank*, 151 F.3d 712, 716 (7th Cir. 1998) (the inference that a missing record contained adverse evidence was not justified when the record's loss was inadvertent); *see also Akiona*, 938 F.2d at 161 (noting that "a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy the [evidence] is more likely to have been threatened by the [evidence]

than is a party in the same position who does not destroy the [evidence]," and that the adverse inference is based upon evidentiary and deterrence rationales) (*quoting Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988)).

Here, as explained previously, Plaintiff had an obligation to preserve her Facebook comments; she deleted the comments with a culpable state of mind, and the comments were relevant to Defendants' claim. Although Plaintiff's counsel may have failed to advise Plaintiff that she needed to save her Facebook posts and of the possible consequences for failing to do so, the deletion of a Facebook comment is an intentional act, not an accident, and the Court cannot infer that Plaintiff deleted Facebook comments which stated that she enjoyed working for Defendant Dr. Atwood, after she contemplated the instant litigation, for an innocent reason. Accordingly, the Court finds that an adverse inference regarding Plaintiff's deleted Facebook comments as described in the Declaration of Kelli Atwood, Docket No. 56, at 21, is appropriate.

## IV.  CONCLUSION

Based on the foregoing, and good cause appearing therefore,

IT IS HEREBY ORDERED that Defendant Atwood Urgent Dental Care, PLLC's Motion for Sanctions for Destruction of Text Messages and Social media Posts, Docket No. 56, is **GRANTED in part and DENIED in part**.

IT IS FURTHER ORDERED that Defendants' request for dismissal sanctions is **DENIED**.

IT IS FURTHER ORDERED that Defendants' request for an adverse inference is **GRANTED in part**, in accordance with this order.

DATED: March 18, 2014.

NANCY J. KOPPE
**United States Magistrate Judge**