UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| HEATHER PAINTER, <br><br> Plaintiff, <br><br> v. <br><br> AARON ATWOOD, D.D.S., et al., <br><br> Defendants. | Case No. 2:12-cv-01215-JCM-NJK <br><br> ORDER |

Presently before the court is defendants/counterclaimants' Aaron Atwood, D.D.S. ("Dr. Atwood") and Atwood Urgent Dental Care, PLLC ("Atwood Urgent") and third-party plaintiff Kelli Atwood's (collectively "defendants") renewed motion for partial summary judgment. (Doc. # 89). Plaintiff Heather Painter filed a response in opposition, (doc. #98), and defendants filed a reply. (Doc. # 109).

**I.   Background**

This is a suit for monetary and declaratory relief for various tort claims stemming from alleged sexual harassment. Plaintiff began working at defendant Atwood Urgent in or around July 2010. (Doc. # 1 at ¶ 8). Atwood Urgent is a "24/7" dental practice that serves patients after business hours. (*See id.* at ¶ 9). Plaintiff's duties included assisting defendant Aaron Atwood, D.D.S. ("Dr. Atwood") with dental procedures in addition to office and clerical work. (*Id.* at ¶ 8). Plaintiff would occasionally perform these duties in the evenings. (*Id.* at ¶ 9).

Plaintiff alleges that after a few months of employment, Dr. Atwood began to initiate conversations about her dating life. (*Id.* at ¶ 11). According to plaintiff, Dr. Atwood's actions and comments became increasingly sexual and aggressive. (*See id.* at ¶¶ 11-15).

1

Plaintiff alleges that on May 29, 2011, Dr. Atwood requested that she come in to the office to help him with an after-hours appointment. The patient did not show. (*Id.* at ¶ 17). Plaintiff alleges that Dr. Atwood, with no one else in the building, attempted to either rape or sexually assault her. (*Id.* at ¶ 17). Plaintiff resigned from Atwood Urgent shortly thereafter.

On July 10, 2012, plaintiff filed a complaint alleging four causes of action: (1) intentional infliction of emotional distress ("IIED"); (2) battery; (3) false imprisonment; and (4) constructive discharge. (*See id.*).

On January 23, 2013, defendants answered the complaint. (Doc. # 14). The answer included counterclaims and a third-party complaint against plaintiff. The counterclaims allege that Kelli Atwood and Dr. Atwood ("the Atwoods") entered into a promissory note with plaintiff in exchange for $2,500 with interest accruing on the unpaid principal at 8% per annum. (Doc. # 14, ¶¶ 8-9). The parties allegedly entered into the note on February 1, 2011. (*Id.*). Under the note, plaintiff agreed to repay the Atwoods in monthly installments of $214.47 commencing on April 1, 2011, until the note was paid off on March 1, 2012. (*Id.* at ¶ 10).

The Atwoods allege that plaintiff was unable or unwilling to repay the money loaned under the note. (Id. at ¶ 14). Based on the foregoing, the Atwoods alleged the following three causes of action against plaintiff: (1) breach of contract; (2) unjust enrichment; and (3) breach of the covenant of good faith and fair dealing.

This court's June 18, 2014 order, (doc. #86), denied defendants' motion for partial summary judgment. (Docs. ## 57 & 66[1]). The court found that defendants failed to properly authenticate the evidence set forth to support their motion. Specifically, defendants failed to attach the reporter's certification to the excerpts of deposition transcripts used to support their motion. Because the motion relied almost exclusively on the excerpts, the court did not reach the merits of the motion for partial summary judgment.

In response to the order, defendants filed a motion for extension of time to file dispositive motions on June 20, 2014. (Doc. # 87). Plaintiff filed a non-opposition. (Doc. # 90). On June 23, 2014, defendants filed the instant motion for partial summary judgment to which they attached

---

[1] Doc. # 66 is a redacted version of doc. # 57 and is identical in all material respects.

the reporter's certificate.  (Doc. # 89).

## II.     Motion for Partial Summary Judgment

### *A.  Legal Standard*

The Federal Rules of Civil Procedure provide for summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways:  (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

B. *Constructive Discharge*

"Employees in Nevada are presumed to be employed at-will unless the employee can prove facts legally sufficient to show a contrary agreement was in effect." *Dillard Dept. Stores, Inc, v. Beckwith*, 989 P.2d 882, 884-85 (Nev. 1999) (internal citations and quotations omitted). "The at-will rule gives the employer the right to discharge an employee for any reason, so long as the reason does not violate public policy." *Id.*

An action in tort for constructive discharge "has been held to exist when an employer creates working conditions so intolerable and discriminatory that a reasonable person in the employee's position would feel compelled to resign." *Martin v. Sears Roebuck & Co.*, 889 P.2d 551, 553 (Nev. 1995). Under Nevada law, a tortious discharge is shown to exist upon proof that:

> (1) the employee's resignation was induced by action and conditions that are violative of public policy; (2) a reasonable person in the employee's position at the time of resignation would have also resigned because of the aggravated and intolerable employment actions and conditions; (3) the employer had actual or constructive knowledge of the intolerable actions and conditions and their impact on the employee; and (4) the situation could have been remedied.

/ / /

*Beckwith*, 989 P.2d at 885.  Thus, "[o]ne of the elements necessary to prove constructive or tortious discharge is that the action by the employer was in violation of public policy." *Id.* at 886.  Public policy exceptions in the tortious discharge or constructive discharge context "are severely limited to those rare and exceptional cases where the employer's conduct violates strong and compelling public policy." *Sands Regent v. Valgardson*, 777 P.2d 898, 900 (Nev. 1989).  Previously in this action, this court held that rape and sexual assault are violative of public policy for purposes of proving constructive discharge. *See Painter v. Atwood*, 912 F. Supp. 2d 962, 968 (D. Nev. 2012); (*see also* doc. # 12).

First, we consider defendants' request for judicial notice. (Doc. # 77).  Defendants request the court take judicial notice of Magistrate Judge Nancy J. Koppe's order on defendants' motion for spoliation sanctions for destruction of text messages and Facebook posts, (doc. # 56), where the court noted:

> Plaintiff's counsel argued . . . that those Facebook posts were not relevant because Plaintiff has already admitted to enjoying working for Defendant Dr. Atwood and because her constructive discharge claim is based entirely on the alleged May 2011 incident.

(Doc. # 75 p. 9).  Defendants mistakenly characterize the above summation of plaintiff's counsel's arguments as the "law of the case" to argue that plaintiff's constructive discharge claim rests entirely on the May 29, 2011 incident. (*See* doc. # 109 p. 13).  Therefore, defendants argue plaintiff's claim for constructive discharge fails because a single isolated incident is not sufficient as a matter of law to support a finding of constructive discharge. (Doc. # 109 p. 13) (citing *Sanchez v. City of Santa Ana*, 915 F.2d 424, 431 (9th Cir. 1990)).

Defendants' argument is without merit.  First, Federal Rule of Evidence 201 provides for judicial notice of adjudicative facts.  Under Rule 201(b)(2), the court may "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  The court's summary of plaintiff's argument is not a finding of fact.

Moreover, the court expressly rejected plaintiff's argument that certain destroyed Facebook posts were not relevant precisely because plaintiff's claims are not based exclusively on the May

29, 2011, incident, but on the environment at Atwood Urgent as a whole.[2]  Therefore, the court declines to take judicial notice as requested by defendants.  Accordingly, plaintiff's claim for constructive discharge does not fail as a matter of law as based solely on the May 29, 2011 incident.

Next, defendants argue plaintiff's claim for constructive discharge fails as a matter of law due to lack of evidence. (*See* doc. # 89 p. 5).  Defendants point out that plaintiff never complained to Dr. Atwood about his unwanted advances, did not look for other employment, and voluntarily quit her job at Atwood Urgent. (*See* doc. # 89 p. 6).  Defendants further argue that even if sexual assault qualifies as a public policy exception to the at-will doctrine, there is no evidence Dr. Atwood attempted to rape or sexually assault plaintiff.  Defendants point out that plaintiff did not "hit, scratch, or punch Dr. Atwood in an effort to escape," clocked out after the alleged attack, and accepted a ride home from Dr. Atwood even though plaintiff could have entered a gym next door "or crossed the street and entered a Von's [sic] grocery store."  (Doc. # 109 p. 11-12).  Additionally, plaintiff did not file a police report and apologized to Dr. Atwood the day after the alleged assault via text message for not being able to help with an after-hours appointment the following evening. *Id.* at 12.

Plaintiff responds that sexual assault is violative of public policy and thus qualifies as an exception to the at-will doctrine.  Further, whether a reasonable person would feel compelled to resign under the circumstances is a question of material fact precluding summary judgment. (*see* doc. # 98 p. 20).

The court finds that whether a reasonable person in plaintiff's situation would have felt compelled to resign is a genuine issue of material fact precluding summary judgment.  This court's December 12, 2012, order specifically addressed whether rape or sexual assault qualify as public policy exceptions to the at-will doctrine.  (*See* doc. # 12).  Finding that rape and sexual assault are violative of public policy, this court denied defendants' motion to dismiss plaintiff's constructive discharge claim.  Defendants' argument that there is insufficient evidence to support plaintiff's claim of alleged sexual assault causing her resignation is without merit.  Defendants have not

---

[2] "Plaintiff's Facebook comments . . . are directly relevant to this litigation.  Plaintiff's entire lawsuit centers around her assertion that the work environment at Defendant Dr. Atwood's dental practice was sexual in nature."  (Doc. # 75 p. 9).

6

negated any element of plaintiff's constructive discharge claim or demonstrated that plaintiff has failed to make a showing sufficient to establish an essential element of that claim. Specifically, defendants have not proved that the alleged sexual assault of plaintiff on May 29, 2011 did not occur or did not induce plaintiff's subsequent resignation.

Additionally, defendants have not offered any evidence to show that Dr. Atwood did not have actual or constructive knowledge of the impact of his actions on plaintiff. There is conflicting evidence as to whether Dr. Atwood was aware that plaintiff was upset by his conduct. Therefore, the court denies defendants' motion for summary judgment with regard to plaintiff's constructive discharge claim.

*C. False Imprisonment*

Under Nevada law, "[f]alse imprisonment is an unlawful violation of the personal liberty of another, and consists in confinement or detention without sufficient legal authority." NRS 200.460. An actor is subject to liability to another for false imprisonment if (1) he acts intending to confine the other within boundaries fixed by the actor, and (2) his act directly or indirectly results in such a confinement of the other, and (3) the other is conscious of the confinement or is harmed by it. *See* Restatement (Second) of Torts § 35 (1965).

Defendants argue plaintiff's claim for false imprisonment fails because plaintiff voluntarily entered Dr. Atwood's office, Dr. Atwood's office door remained open, Atwood Urgent's front door was unlocked, and plaintiff did not "hit, scratch, or punch" Dr. Atwood. (Doc. # 89 p. 7). Additionally, plaintiff took the time to punch out on the time clock following the incident and accepted a ride home from Dr. Atwood. *Id.*

Plaintiff responds that all elements of a claim for false imprisonment have been met. Dr. Atwood pulled plaintiff onto his lap and used his strength to keep her there, thus, plaintiff was confined within boundaries fixed by Dr. Atwood. Plaintiff's subsequent resignation evidences that she was harmed by this confinement.

Defendants have not presented evidence sufficient to negate an essential element of plaintiff's claim for false imprisonment or demonstrated that plaintiff failed to establish an essential element to such claim. According to plaintiff, Dr. Atwood pulled her onto his lap, used

physical strength to keep her there, and she was temporarily so confined. (*See* doc. # 98 p. 24). Dr. Atwood admits that he pulled plaintiff onto him, but that it was to "tickle her and play with her in a playful manner." (*See id.* at 23). Thus, a genuine issue of material fact remains as to whether Dr. Atwood intended to confine plaintiff when he pulled her onto his lap. Accordingly, this court denies defendants' motion for summary judgment with regard to plaintiff's false imprisonment claim.

  *D. Intentional Infliction of Emotional Distress("IIED")*

To state a claim for IIED, a plaintiff must show: (1) defendant acted in an extreme and outrageous manner; (2) defendant intended to or recklessly disregarded the probability that his conduct could cause plaintiff emotional distress; (3) plaintiff actually suffered extreme or severe emotional distress; and (4) defendant's conduct caused plaintiff's distress. *See Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998). A claim for IIED operates on a continuum: the less extreme the outrage, the greater the need for evidence of physical injury or illness from the emotional distress. *See Chowdry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993). "Liability is only found in extreme cases where the actions of the defendant go beyond all possible bounds of decency" and are atrocious and utterly intolerable. *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993) (citing Restatement (Second) of Torts § 46 cmt. d (1965)).

Defendants argue Dr. Atwood's conduct was not extreme or outrageous because plaintiff apologized for not being able to assist with a subsequent after-hours appointment. (*See* Doc. # 89 p. 25). Further, plaintiff has not shown she suffered severe emotional distress because she returned to work on May 31, 2011; did not immediately seek treatment; began dating someone new shortly after the incident; and eventually became pregnant, despite reporting that she was experiencing avoidance of sexual contact. *See Id.*

Plaintiff responds that Dr. Atwood's hyper-sexual behavior which culminated in the May 29, 2011, incident qualifies as extreme and outrageous conduct. (*See* doc. #98). Additionally, plaintiff points out that her delay in seeking counseling is not dispositive, as there is no requirement that a plaintiff alleging emotional distress seek any counseling.

/ / /

Defendants have failed to provide sufficient evidence to negate plaintiff's IIED claim. Attempted rape or sexual assault is clearly extreme and offensive conduct. According to plaintiff, Dr. Atwood climbed on top of her with his pants undone and held her down. She feared that he was going to rape her. (*See* doc. #98 p. 17). Dr. Atwood disputes plaintiff's recollection of events. During his deposition, he stated that he was only attempting to tickle plaintiff and that their relationship was consensual. (*See* doc. #75 p. 1). Whether Dr. Atwood did attempt to rape or sexually assault plaintiff is a disputed issue of material fact.

Plaintiff has also provided competent evidence that she suffered extreme emotional distress sufficient to survive summary judgment. That plaintiff briefly returned to work at Atwood Urgent following the May 29, 2011 incident, called in sick to subsequent after-hours appointments, started a new relationship, and eventually bore a child does not prove that she did not suffer extreme emotional distress. Notably, plaintiff did not report she was pregnant until February 10, 2012, approximately nine months after the alleged sexual assault. That plaintiff allegedly began a relationship shortly after resigning from Atwood Urgent and became pregnant some nine months later does not establish that plaintiff did not suffer emotional distress. Therefore, the court denies defendants' motion for summary judgment as to intentional infliction of emotional distress.

### E. Breach of Contract

A party to a contract may seek rescission of that contract based on fraud in the inducement. *J.A. Jones Constr. v. Lehrer McGovern Boyis*, 89 P.3d 1009, 1018 (Nev. 2004). Thus, fraudulent inducement is an affirmative defense to a suit for breach of contract. To prove fraudulent inducement, a plaintiff must prove: (1) a false representation made by the party defendant; (2) defendant's knowledge or belief that the representation was false; (3) intention to therewith induce plaintiff to consent to the formation of the contract; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) damage to plaintiff resulting from such reliance. *See Id.* at 1018. Thus, under Nevada law, "[t]o establish fraud in the inducement of a contract, a party must prove, among other things, that the other party made a false representation that was material to the transaction." *Awada v. Shuffle Master, Inc.*, 173 P.3d 707, 713 (Nev. 2007) (internal citation omitted).

/ / /

Plaintiff filed an answer to defendants' counterclaims in which she alleged, among other things, that Dr. Atwood fraudulently induced her to enter into the promissory note with the Atwoods. (*See* doc. # 31 p. 5). Plaintiff alleges that as Dr. Atwood's sexual advances became more aggressive, he induced her to take the loan from him in February 2011 to impede her from asserting her rights. (*See* doc. # 98 p. 28). Defendants argue plaintiff's assertion of fraudulent inducement was discounted by her own deposition testimony. Specifically, plaintiff admitted she asked the Atwoods for the loan and did not claim she had been fraudulently induced during her deposition. (*See* doc. # 109 p. 8). Plaintiff points out that counsel for Kelli Atwood failed to ask plaintiff a single question about her fraudulent inducement defense at her deposition. (*See* doc. # 98 p. 28).

Dr. Atwood's intent in entering into the promissory note with plaintiff is a question of material fact precluding summary judgment. Plaintiff's admission that she asked the Atwoods for the loan and failure to mention her fraudulent inducement defense during her deposition do not negate plaintiff's fraudulent inducement defense. Therefore, the court denies defendants' motion for summary judgment as to breach of contract.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants/counterclaimants'/third-party plaintiff's renewed motion for partial summary judgment, (doc. #89), is DENIED.

DATED THIS 23rd day of October 2014.

_____
JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE